**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 30, 2009

Charles R. Fulbruge III
Clerk

No. 08-10616

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

HO SIK JANG

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before DAVIS, OWEN, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

In this case, the district court found that Defendant Ho Sik Jang, a citizen of South Korea subject to a final order of removal from the United States, violated a special and mandatory condition of his supervised release by providing misleading answers to questions posed by a Korean consulate resulting in his non-admittance to Korea. We affirm.

## I. FACTS

In December 2003, an immigration judge ordered Jang's deportation from the United States based on two Texas convictions. After exhausting various appeals, Jang repeatedly failed to complete a visa application to South Korea. Based on this conduct, the government indicted Jang under 8 U.S.C. §

1253(a)(1)(B), which forbids an alien under a final order of removal from wilfully failing or refusing to complete documents necessary to ensure his departure. After a jury returned a guilty verdict, the district court sentenced Jang to thirty three months' imprisonment, followed by a two year term of supervised release. The district court imposed the following special condition of release:

> [t]he defendant shall comply with all immigration regulations and laws including all administrative procedures to effect the successful removal of the defendant from the United States, which includes signing the INS Form I-229 and completing a Korean Visa application.

As with all individuals on supervised release, Jang was also subject to the mandatory condition prohibiting him from committing another federal, state, or local crime.

In June of 2007, Jang was released from prison to the custody of Immigration and Customs Enforcement (ICE). He again refused to complete the documents necessary to ensure his deportation. As a result, Jang's probation officer filed a Petition for Offender Under Supervision with the district court. Following his arrest, Jang appeared before the district court, promising to sign a Korean visa application. He told the district court that he would rather be free in Korea than incarcerated in the United States. Consequently, the district court allowed Jang's supervised release to continue.

After the hearing, Jang, as promised, completed the Korean visa application and signed the INS Form I-229. In addition, Korea requires that its citizens repatriate on a voluntary basis. The country determines whether a citizen's repatriation is voluntary via an interview conducted by a Korean consulate. If the consulate determines that the individual desires to return, a travel certificate is issued. Jang's interview with the consulate was conducted in private over the phone.

After the interview, the Korean consulate sent a letter to the Department of Homeland Security, stating:

> We have difficulties issuing the T/C [Travel Certificate].
>
> The important factors we consider before issuing a T/C are the deportee's willingness to go back to Korea and pending legal processes if any. We have direct contact with a deportee, when we receive the T/C request from an Immigration Office, to make sure if a) he wants to return to Korea and the signature on the application for the T/C was made with his own will and if b) he is going to appeal for the case. We issue T/C's when the above mentioned requirements are clarified.
>
> During my conversation with Mr. Jang, he told me his signature was not made voluntarily and he didn't want to return to Korea. He also expressed his strong will to appeal to the court of Texas for his case.
>
> With the above reasons, the Korean Consulate General won't be able to issue a T/C for Mr. Jang.

After receiving this letter, Jang's probation officer filed another Petition for Offender Under Supervision. The petition alleged that Jang's answers to the Korean consulate's questions violated the aforementioned special and mandatory conditions of his release. At the subsequent revocation hearing, the government offered the Korean consulate's letter as evidence and called ICE agent James Smith to testify. Agent Smith testified that Jang's answers to the questions posed by the Korean consulate violated the special condition of his release. As to the mandatory condition of release, Agent Smith testified that Jang's answers violated 8 U.S.C. § 1253, although he did not specify the particular subsection implicated. Jang offered no evidence in rebuttal.

Based on this testimony, the district court revoked Jang's supervised release, stating "I don't think you [Jang] have any intention of abiding by any of the orders of anybody. And sobeit [sic so be it]." The district court sentenced

Jang to twenty-four months in prison plus an additional year of supervised release. When Jang objected to his sentence of twenty-four months' imprisonment as unreasonable, the district court stated:

> I think it's a reasonable sentence because Mr. Jang continues to confuse his desire to stay in the United States with his voluntariness to leave at this time. And those are different things. And he's simply toying with the court and with the INS and everybody else.
>
> And I think this is the only way to get his attention is to do this. I think its's a reasonable sentence.
>
> I just think – there's got to be something done to wake Mr. Jang up. And we will see if going to the penitentiary again will do that. And I think that may be part of the case.
>
> If not, and he wants to spend his time in the penitentiary, he certainly deserves the punishment.

This appealed followed.

## II. DISCUSSION

Jang challenges the district court's decision to revoke his supervised release on a number of grounds. With respect to the finding that he violated the special condition of his release, Jang contends that his interview with the Korean consulate constituted an "international" immigration procedure falling beyond the scope of the condition's requirement that he comply with all immigration regulations and laws. Alternatively, he contends that he complied with the special condition by candidly answering the consulate's questions; he also contends that the district court erred to the extent that it construed the special condition to require that he lie to the consulate. Finally, Jang contends that the evidence is insufficient to support the district court's finding that he violated the mandatory condition of his release that he not commit another federal, state, or local crime.

In order to revoke probation, a district court must only "find[ ] by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). "[R]evocation of probation does not require proof sufficient to sustain a criminal conviction. All that is required is enough evidence, within the sound judicial discretion, to satisfy the district judge that the conduct of the probationer has not met the conditions of probation." *United States v. Garza*, 484 F.2d 88, 89 (5th Cir. 1973). Because the record evidence here satisfies that standard as to the district court's finding that Jang violated the mandatory condition of his release, we need not address alternative grounds for the district court's order of revocation. *See United States v. Turner*, 741 F.2d 696, 698 (5th Cir. 1984) ("Where there is an adequate basis for the district court's discretionary action or revoking probation, the reviewing court need not decide a claim of error as to other grounds that had been advanced as a cause for revocation.").

Although Jang failed to challenge the district court's finding that he violated the mandatory condition of his release below, he contends that plain error review is inapplicable in this appeal because the government failed to identify a crime on which the district court's finding could be based. Jang correctly notes that neither the government's Petition for Offender Under Supervision nor the district court's oral finding identify a specific crime that Jang's conduct violated. But during the hearing, agent Smith testified that Jang's conduct violated 8 U.S.C. § 1253 because Jang's answers to the consular's questions constituted a "hindrance" to his removal. Agent Smith's use of the word "hindrance" was an obvious reference to subsection (a)(1)(C), which makes it a crime for an alien under a final order of removal to "connive[ ] or conspire [ ], or take[ ] any other action, designed to prevent or hamper or with the purpose of preventing or hampering the alien's departure pursuant to" a removal order. As such, the government adequately identified the basis for its allegations that

Jang violated the mandatory condition of his release. Because Jang did not challenge the district court's finding below, we review only for plain error.

To establish plain error, Jang must show (1) there is plain and obvious error (2) that affects his substantial rights. *United States v. Coil*, 442 F.3d 912, 916 (5th Cir. 2006). An error is plain if it is clear or obvious. *United States v. Duffaut*, 314 F.3d 203, 209 (5th Cir. 2002).

Jang cannot establish plain error. At his initial revocation hearing, Jang told the district court that he would rather be free in Korea than incarcerated in the United States. He also agreed to sign the documents necessary to effect his deportation. Based on these statements, the district court allowed Jang's supervised release to continue. Thus, while returning to Korea might not have been Jang's ideal choice, the record shows that he made the calculated and voluntary decision to cooperate in his return. In light of this evidence, the district court could reasonably conclude that Jang's statement to the consular that he had not signed his travel certificate voluntarily[1] and that he wished to pursue further appeals[2] "was designed to prevent or hamper or [made] with the purpose of preventing or hampering" his departure. 8 U.S.C. § 1253(a)(1)(C). As such, the district court did not plainly error in finding that Jang violated the mandatory condition of his release.

## III. CONCLUSION

For these reasons, the district court's judgment is AFFIRMED.

---

[1] Jang contends that the district court did not explicitly find that he had lied to the Korean officials. However, the district court clearly found that Jang was "toying" with the court, INS "and everyone else." Thus, the court found that Jang was disingenuous in his conduct, including his answers to the Korean official. Jang did not request more specific findings from the court, and he has not shown plain error in the court's recitation of its findings.

[2] Jang has not articulated any appeal still available to him that would prevent his deportation, and his brief concedes that his immigration appeals have been exhausted.