# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 26, 2010

No. 09-20360

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

ARTURO BUSTILLOS-PENA,
a/k/a Arturo Pena Bustillos, a/k/a
Arturo Bustillos

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before GARWOOD, STEWART, and CLEMENT, Circuit Judges.

GARWOOD, Circuit Judge:

On October 21, 2008, Arturo Bustillos-Peña (Bustillos) pleaded guilty to violating 8 U.S.C. § 1326 by being knowingly and unlawfully present in the United States on or about November 18, 2005 in Huntsville, Texas, after having been deported for an aggravated felony.  At sentencing, over his objection, the district court enhanced his offense by sixteen levels on the ground that he had reentered the United States after being convicted of a felony that was a drug trafficking offense for which the sentence imposed exceeded thirteen months' imprisonment.

No. 09-20360

Bustillos contended at sentencing that this enhancement was improper, because at the time he was deported, and at the time he reentered the country, he had only received a probated sentence.  It was not until after he had been present in the country illegally for two years that his probation was revoked and he was given a sentence of imprisonment that exceeded thirteen months.  The district court overruled his objection, and he appeals his sentence.

We find that the provision of the November 2008 United States Sentencing Commission's *Guidelines Manual* (Sentencing Guidelines) under which Bustillos's sentence was enhanced was ambiguous and thus must be read in his favor.  Accordingly, for the reasons discussed below, we vacate his sentence and remand his case for re-sentencing.

## FACTS AND PROCEEDINGS BELOW

On August 30, 2001, Bustillos was convicted of delivering approximately fifty-six pounds of marijuana in the 275th Judicial District Court of Hidalgo County, Texas.  He was sentenced to ten years' probation.  On June 7, 2003, he was deported to Mexico.

In August 2003, Bustillos re-entered the United States illegally.  Two years later, on August 31, 2005, he pled guilty to and was convicted in the 275th Judicial District court of Hidalgo County, Texas, of assaulting a public servant in June 2005.  The Texas Department of Criminal Justice moved to revoke his probation on the marijuana offense, and the court revoked his probation and sentenced him to five years of imprisonment for the delivery of marijuana offense and two years for the assault, to run concurrently.

On November 18, 2005, an agent of United States Immigration and Customs Enforcement (ICE) discovered Bustillos in the Texas prison in

2

No. 09-20360

Huntsville, Texas.  Bustillos was subsequently indicted for being present in the United States illegally after having been deported for an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2).[1]  He pleaded guilty on October 21, 2008.

Bustillos's Pre-Sentence Investigation Report (PSR) recommended a sixteen-level increase in his offense level under §2L1.2 of the Sentencing Guidelines,[2] because it found that he had been deported after a conviction for a

---

[1] Section 1326 provides, in relevant part:

**"§ 1326.  Reentry of removed aliens**
**(a) In general**
    Subject to subsection (b) of this section, any alien who—
        **(1)** has been . . . deported . . . and thereafter
        **(2)** enters, attempts to enter, or is at any time found in, the
    United States, . . .
shall be fined under Title 18, or imprisoned not more than 2 years, or both.
**(b) Criminal penalties for reentry of certain removed aliens**
    Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection—
        * * *
        **(2)** whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both;
        * * *
For the purposes of this subsection, the term 'removal' includes any agreement in which an alien stipulates to removal during (or not during) a criminal trial under either Federal or State law."  8 U.S.C.A. § 1326 (West 2005) (emphasis in original).

[2] Section 2L1.2 provides, in relevant part:

**"§ 2L1.2   Unlawfully Entering or Remaining in the United States**
    (a)   Base Offense Level: **8**
    (b)   Specific Offense Characteristic
        (1)   Apply the Greatest:
            If the defendant previously was deported, or unlawfully remained in the United States, after—
            (A)   a conviction for a felony that is (i) a drug

No. 09-20360

drug trafficking offense for which the sentence imposed exceeded thirteen months.  Bustillos objected to this enhancement on the ground that a prison sentence had not been imposed until after he had reentered the country.  Thus, he argued, he had not been deported *after* a sentence was imposed that exceeded thirteen months.

The district court found that the temporal constraint of §2L1.2 was satisfied, because it viewed Bustillos's sentence as relating back to his conviction, which had occurred before his deportation.  Accordingly, the district court adopted the PSR's recommendation over Bustillos's objection and calculated his offense level to be twenty-one, after subtracting three points for acceptance of responsibility.  It found that he had eleven criminal history points, giving him a criminal history category of V.  After hearing his arguments for a downward departure, it sentenced him to sixty-nine months' imprisonment, one month below his thus calculated guideline range of seventy to eighty-seven months.

Bustillos timely filed a notice of appeal.

## DISCUSSION

On appeal, Bustillos contends that the district court erred by applying the sixteen-level enhancement to his sentence.  He asserts that the plain language of §2L1.2 indicates that the sixteen-level enhancement only applies where a defendant was deported after the imposition of a prison sentence exceeding thirteen months.  In the alternative, he argues that the guideline is ambiguous

---

trafficking offense for which the sentence imposed exceeded 13 months; . . . increase by **16** levels . . . ."

U.S.S.G. §2L1.2 (emphasis in original).

No. 09-20360

on the facts of his case and that the rule of lenity requires it to be interpreted in his favor.

## I. Standard of Review

We review a district court's interpretation of the Sentencing Guidelines de novo. *United States v. Velez-Alderete*, 569 F.3d 541, 543 (5th Cir. 2009) (per curiam); *United States v. Calderon-Pena*, 383 F.3d 254, 256 (5th Cir. 2004) (en banc) (per curiam).

## II. Applicability of the Enhancement

Bustillos argues that, in order for the sixteen-level enhancement to apply, a defendant must be given a prison sentence in excess of thirteen months before he is deported. The Government disagrees, arguing that when the sentence is imposed is irrelevant, so long as the conviction precedes the deportation. In its view, any sentence that is later imposed on that conviction after the defendant's illegal reentry automatically relates back to the date of the conviction and satisfies the temporal requirement of §2L1.2.

The Government contends that its reading is compelled by our opinion in *United States v. Compian-Torres*, 320 F.3d 514 (5th Cir. 2003). There, the defendant had received a probated sentence in 1994. *Id.* at 515. This sentence was revoked in 2000, and he was sentenced to two years' imprisonment. *Id.* He was deported *after* he received his sentence of imprisonment, and he thereafter reentered illegally. *See id.* at 514–15 & n.1. He pleaded guilty to illegal reentry, and the district court applied the sixteen-level enhancement under §2L1.2 at sentencing. *Id.* at 514–15. On appeal, he argued that this enhancement was improper, because at the time of his conviction, he had received only a probated sentence, not a sentence of imprisonment. *Id.* He argued that the sentence he

5

No. 09-20360

had received upon the revocation of his probation could not be considered under §2L1.2, because it was for a separate offense and because "sentence imposed" should be read "sentence originally imposed." *Id.*

Reviewing the judgment of the district court, we found that "[u]nder both federal and state law a sentence imposed upon revocation of probation is treated as a sentence on the original underlying offense. . . . [N]ot . . . a sanction for the new conduct . . . ." *Id.* at 516. We also found no basis for his claim that "sentence imposed" meant "sentence originally imposed." *Id.* at 515. Accordingly, we rejected his argument and held that the term of imprisonment he had received at his revocation hearing was part of the sentence imposed on his conviction for the purposes of the guideline. *Id.* We concluded that the district court had applied the sixteen-level enhancement correctly. *Id.* at 517.

Our holding in *Compian-Torres* does not control this case. In *Compian-Torres*, the defendant's probation was revoked before he was deported. Thus, we had no reason to address whether or not the sixteen-level enhancement applies where the revocation sentence is imposed after a defendant's illegal reentry. Our determination in *Compian-Torres* that "sentence imposed" did not mean "sentence originally imposed" also has no effect on this case. Bustillos does not argue that we should imply "originally" into §2L1.2. Nor does he contest that a revocation sentence is a sentence on the same conduct and conviction as the probated sentence it supersedes. Instead, he argues that, under the plain language of §2L1.2, the sixteen-level enhancement cannot be applied unless the defendant received a prison sentence exceeding thirteen months before he was deported.

The government argues that the plain language of the enhancement only

6

indicates that the drug trafficking conviction must precede the deportation of the defendant.  It argues that when the sentence is imposed is irrelevant.  It also asserts that this interpretation is supported by the commentary to §2L1.2, which provides that:

> "'Sentence imposed' has the meaning given the term 'sentence of imprisonment' in Application Note 2 and subsection (b) of §4A1.2 (Definitions and Instructions for Computing Criminal History), without regard to the date of the conviction.  The length of the sentence imposed includes any term of imprisonment given upon revocation of probation, parole, or supervised release."  USSG §2L1.2, comment. (n.1).

Application Note 2 of §4A1.2 states that "[t]o qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence . . . ."  USSG §4A1.2, comment. (n.2).  Subsection (b) of §4A1.2 provides:

> "**(b)    Sentence of Imprisonment**
> (1)    The term 'sentence of imprisonment' means a sentence of incarceration and refers to the maximum sentence imposed.
> (2)    If part of a sentence of imprisonment was suspended, 'sentence of imprisonment' refers only to the portion that was not suspended."
> USSG §4A1.2(b) (emphasis in original).

The government's interpretation of §2L1.2 has some support in the commentary's statement that "sentence imposed" is to be determined "without regard to the date of the conviction."  However, Bustillos argues that this statement is subservient to the enhancement's overarching requirement that a defendant have been deported "after" the imposition of the sentence.

Bustillos's interpretation is the most natural reading of §2L1.2 and its commentary.  The guideline covers the act of illegal reentry.  The purpose of the

sixteen-level enhancement is to ensure that a defendant who reenters the United States illegally after having committed a serious crime is punished more severely than a defendant who reenters the country illegally without having committed a serious crime. The seriousness of a defendant's previous crime is measured by looking at the type of conviction and the length of the sentence he received. This, in turn, determines the seriousness of the illegal reentry. Illegal reentry by a defendant who received a probated sentence is not as great a cause for concern as illegal reentry by a defendant who was given an actual sentence of imprisonment for the same offense, because the probated defendant's offense was not deemed to be as serious by the court of conviction. Bustillos's interpretation allows the guideline to punish the probated defendant more leniently than the defendant who reentered after receiving an actual sentence. The Government's interpretation would treat these two defendants the same if, sometime after he reentered the country, the probated defendant's probation were revoked.

It seems counterintuitive that a guideline enhancement designed to reflect the nature of a defendant's illegal reentry offense could be triggered by unrelated conduct that occurred long after the reentry. *Cf. Carachuri-Rosendo v. Holder*, No. 09–60, slip op. at 10 (U.S. June 14, 2010) ("[I]n this case the Government argues for a result that 'the English language tells us not to expect,' so we must be 'very wary of the Government's position.'" (quoting *Lopez v. Gonzalez*, 127 S.Ct. 625, 630 (2006))). Unrelated conduct is normally assessed in the form of criminal history points or, where the court departs from the Sentencing Guidelines, as part of the 18 U.S.C. § 3553(a) factors. *See* 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2010); USSG Ch. 4.

No. 09-20360

The Government's interpretation also thwarts one of the purposes of the Sentencing Guidelines. The Guidelines were designed in part to create "reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders." USSG Ch. 1, Pt. A. Under the Government's interpretation, it is possible for two defendants who committed identical acts to receive widely disparate guideline ranges. One of the conditions of virtually every probation is that a defendant not break the law. A defendant need not be convicted of criminal conduct in order to have his probation revoked, so long as the conduct is proved by a preponderance of the evidence at his revocation hearing. 18 U.S.C.A. § 3583(e)(3) (West Supp. 2010); *United States v. Jang*, 574 F.3d 263, 265 (5th Cir. 2009); *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993). Illegal reentry is a violation of federal law. Thus, a defendant who was sentenced to probation and deported, and who later reentered illegally, could have his probation revoked by state authorities if they discovered that he had reentered illegally. If he were sentenced to more than thirteen months' imprisonment and were later found in state custody by ICE officials, he could then be charged with illegal reentry and have his offense level enhanced by sixteen levels under the Government's interpretation. Meanwhile, a second defendant with an identical criminal history who also illegally reentered, but was fortunate enough to be apprehended by ICE before the state authorities, would have a much lower sentence for his guideline range, even if the state later revoked his probation based on his federal conviction. In contrast, under Bustillos's interpretation, both defendants would receive identical guideline ranges.

Four other circuit courts have examined the language of §2L1.2 and

9

reached different conclusions. The Second Circuit adopted the Government's view, holding that what matters in satisfying the temporal constraint on the sixteen-level enhancement is the date of the conviction, not the date upon which the sentence was imposed. *United States v. Compres-Paulino*, 393 F.3d 116, 118 (2d Cir. 2004). The Eleventh Circuit adopted Bustillos's position. *United States v. Guzman-Bera*, 216 F.3d 1019, 1021 (11th Cir. 2000). The Tenth Circuit found that a district court did not plainly err by adopting the Government's approach, but noted that it might have reached a different result if error had been preserved, because "[a] careful examination of the context and purposes of §2L1.2 might convince us that Defendant's interpretation is the correct one." *United States v. Ruiz-Gea*, 340 F.3d 1181, 1188 (10th Cir. 2003). In reviewing a sentence based on facts analogous to those we addressed in *Compian-Torres*, the Ninth Circuit found that the sixteen-level enhancement was appropriate, as we did, but stated that it was only appropriate where the defendant's term of imprisonment was imposed "prior to his deportation and reentry". *United States v. Jimenez*, 258 F.3d 1120, 1125–26 (9th Cir. 2001). Thus, the Ninth Circuit's interpretation of §2L1.2 favors Bustillos's approach.

Although we find Bustillos's reading of the guideline to be the most natural, we also recognize that the Government's interpretation is plausible. Therefore, we hold that the language of §2L1.2 and its commentary does not plainly support either position. That four other circuits have considered the issue and arrived at different conclusions supports this holding.

"The rule-of-lenity fosters the constitutional due-process principle 'that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited.'" *United States v. Rivera*, 265 F.3d 310, 312 (5th Cir. 2001) (quoting

No. 09-20360

*Dunn v. United States*, 99 S.Ct. 2190, 2197 (1979)). "'The rule of lenity . . . applies only when, after consulting traditional canons of statutory construction, [a court is] left with an ambiguous statute.'" *Rivera*, 265 F.3d at 312 (quoting *United States v. Shabani*, 115 S.Ct. 382, 386 (1994) (emphasis added)) (alteration in original). Although the provisions of the Sentencing Guidelines are not statutes, we apply the rule of lenity to them when we find that they are ambiguous. *See, e.g.*, *United States v. Skilling*, 554 F.3d 529, 595 (5th Cir. 2009), *vacated in part on other grounds*, _____ S.Ct. ____, No. 08-1394, 2010 WL 2518587 (U.S. June 24, 2010).

In this case, we find that the applicability of the sixteen-level enhancement under §2L1.2 of the Sentencing Guidelines is ambiguous where the defendant was deported before being sentenced to more than thirteen months of imprisonment on a conviction that predated his deportation and where the defendant was convicted of illegal reentry while incarcerated.[3]  Therefore, we

---

[3] We would reach a different result if Bustillos had been released from state confinement and voluntarily remained in the United States before being apprehended by ICE agents.  If that had happened, our analysis would change, because 8 U.S.C. § 1326(a) not only makes it illegal for an alien who has been deported to "enter" the United States, but also makes it illegal for him to be "found in" the United States after deportation.  8 U.S.C.A. § 1326(a) (West 2005).  Similarly, the sixteen-level enhancement under §2L1.2 can be triggered where following his deportation for a drug trafficking offense the alien "remained in" the United States after a prison sentence exceeding thirteen months was imposed for the drug trafficking offense.  USSG §2L1.2.  If Bustillos had been apprehended by ICE after being released from state custody and after being given an opportunity to return to Mexico voluntarily, the sixteen-level enhancement under §2L1.2 would have been proper, because it could have been said that he had "unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a drug trafficking offense for which the sentence imposed exceeded 13 months."  USSG §2L1.2.  Under those facts, his drug trafficking conviction and its sentence in excess of thirteen months would have preceded his offense of remaining in the United States illegally.

However, on the actual facts of this case, the Government could not justify the sixteen-level enhancement under the portion of the guideline that punishes remaining in

No. 09-20360

hold that the rule of lenity applies and that it is error to implement the sixteen-level enhancement under these circumstances.  Accordingly, we hold that the district court erred by enhancing Bustillos's offense level under §2L1.2(b)(1)(A).

## CONCLUSION

For the foregoing reasons, we vacate Bustillos's sentence and remand his case for re-sentencing in accordance with this opinion.

VACATED and REMANDED.

---

the United States, because ICE agents found Bustillos already in prison.  An alien does not violate the law if he is involuntarily present in the United States.  *See United States v. Parga-Rosas*, 238 F.3d 1209, 1213–14 (9th Cir. 2001); *United States v. Berrios-Centeno*, 250 F.3d 294, 298–300 (5th Cir. 2001).  At the time he was found in state prison, Bustillos was no longer voluntarily present in the United States.  Therefore, his presence in the United States did not violate 8 U.S.C. § 1326(a) after he was apprehended by the state of Texas, and it could not have justified the sixteen-level enhancement imposed by the district court.

Bustillos did not object to his indictment, which charged him with violating the law by being present in the United States on the date he was found in prison.  He also did not raise this issue as error before this court.  Accordingly, we do not address it in this opinion.

No. 09-20360

EDITH BROWN CLEMENT, Circuit Judge, dissenting:

I respectfully dissent from the majority's decision to vacate Bustillos's sentence and remand for re-sentencing because I believe that the enhancement applied by the district court is supported by an unambiguous guideline provision, obviating the need to reach the rule of lenity.

Bustillos's interpretation of the guideline provision, adopted as "the most natural reading" by the majority, creates two conditions that must be satisfied in sequence before it can be applied: first, the defendant must be convicted of a drug trafficking offense for which he is sentenced to over thirteen months of imprisonment; and second, the defendant must be deported after the first condition has been met (*i.e.*, the conviction *and* qualifying sentence must take place before deportation). This interpretation misconstrues the plain text of § 2L1.2 of the sentencing guidelines. The text of that section does not enhance the sentence of a defendant who was deported after *being sentenced* to thirteen or more months of imprisonment. Instead, it enhances the sentence of a defendant who is deported after he is *convicted* for a felony that is, as relevant here, "a drug trafficking offense for which the sentence imposed exceeded 13 months." U.S.S.G. § 2L1.2(b)(1)(A)(i). It is the law of this circuit that "[a] sentence imposed on revocation is actually 'imposed' as described in [§ 2L1.2(b)(1)(A)(i)]." *United States v. Compian-Torres,* 320 F.3d 514, 515 (5th Cir. 2003).[1]

---

[1]This interpretation reflects the same understanding of § 2L1.2 as that embodied in application note 1(B)(vii), which went into effect ten months after *Compian-Torres* was decided. That application note makes clear that the "length of the sentence imposed includes *any* term of imprisonment *given upon revocation of probation*." U.S.S.G. § 2L1.2 cmt. n.1(B)(vii) (2008) (emphasis added). An application note "that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is

No. 09-20360

The district court properly determined that Bustillos's pre-deportation 2001 Texas conviction for marijuana delivery constituted a conviction for a "drug trafficking offense." Once that requirement was met, all that remained was for the court to determine whether the "sentence imposed" for the conviction "exceeded 13 months." U.S.S.G. § 2L1.2(b)(1)(A)(i). The term "'[s]entence imposed' has the meaning given the term 'sentence of imprisonment' in Application Note 2 and subsection (b) of §4A1.2[2] . . . *without regard to the date of conviction.* The length of the sentence imposed *includes any imprisonment given upon revocation of probation . . . .*" U.S.S.G. § 2L1.2, cmt. n.1(B)(vii) (emphases added). After the district court properly determined that the sentence imposed for Bustillos's 2001 drug trafficking conviction was five years' imprisonment, she properly applied the sixteen-level enhancement.

"It is well established that our interpretation of the Sentencing Guidelines is subject to the ordinary rules of statutory construction . . . . If the language of the guideline is unambiguous, our inquiry begins and ends with an analysis of the plain meaning of that language." *United States v. Carbajal*, 290 F.3d 277, 283 (5th Cir. 2002) (citation omitted). Because the language of § 2L1.2 is unambiguous, the majority's foray into the "purpose" of § 2L1.2 is unnecessary.

---

inconsistent with, or a plainly erroneous reading of, that guideline." *United States v. Johnson*, 559 F.3d 292, 295 n.4 (5th Cir. 2009) (quoting *Stinson v. United States,* 508 U.S. 36, 38 (1993)).

[2]Application Note 2 of § 4A1.2 states that "[t]o qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence . . . ." U.S.S.G. § 4A1.2, cmt. n.2. Subsection (b) of § 4A1.2 provides:

**(b)    Sentence of Imprisonment**
   (1)    The term "sentence of imprisonment" means a sentence of incarceration and refers to the maximum sentence imposed.
   (2)    If part of a sentence of imprisonment was suspended, "sentence of imprisonment" refers only to the portion that was not suspended.

U.S.S.G. §4A1.2(b) (emphasis in original). Bustillos's sentence clearly qualifies as a "sentence of imprisonment."

It also misses the point—the majority errs when it states that "[i]llegal reentry by a defendant who received a probated sentence is not as great a cause for concern as illegal reentry by a defendant who was given an actual sentence of imprisonment for the same offense, because the probated defendant's offense was not deemed to be as serious by the court of conviction." Maj. Op., *supra* at 8. But the law of this circuit, and many other circuits, is that the seriousness of an infraction is determined retroactively. *See, e.g.*, *Compian-Torres*, 320 F.3d at 516 (collecting cases). The critical inquiry into the seriousness of a prior infraction, therefore, is to be made by the court that sentences the defendant for the illegal reentry, not "the court of conviction." And an originally-probated defendant who reenters, violates his probation, and is imprisoned, should be treated no differently under the guidelines than an originally-imprisoned defendant. Once the probated defendant violates his probation in a manner that causes him to be imprisoned, his crime becomes equally serious under the guidelines as the crime of the originally-imprisoned defendant.

Section 2L1.2 imposes a greater enhancement upon a defendant whose pre-deportation *conviction* is more serious, measured by the duration of the prison sentence imposed for that conviction, as determined at the time of sentencing for the illegal reentry. The date that the prison sentence is imposed relative to the date of the defendant's deportation is of no import under the guideline or its application notes. Nor should it be, since post-deportation, probation-revoking conduct (like Bustillos's assault on a public servant) that triggers imposition of a qualifying sentence for the pre-deportation conviction demonstrates the seriousness of that original conviction. *See United States v. Moreno-Cisneros*, 319 F.3d 456, 458 (9th Cir. 2003) ("A defendant who does not abide by the terms of his probation has demonstrated that he should not have been given probation in the first place.").

The guideline is unambiguous and the majority's application of the rule of

No. 09-20360

lenity is therefore inappropriate.  Accordingly, I respectfully dissent.