# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 25, 2012

Lyle W. Cayce
Clerk

No. 10-31110

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

RICARDO NEVARES-BUSTAMANTE,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Louisiana

Before HIGGINBOTHAM, STEWART, and HAYNES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Ricardo Nevares-Bustamante appeals his 90-month sentence for illegal reentry. The district court enhanced his sentence under U.S.S.G. § 2L1.2(b)(1)(A)(ii) (2009) because, in its view, the defendant unlawfully remained in the United States after being convicted of a crime of violence. But Mr. Nevares-Bustamate was not ordered removed after that predicate conviction. Whether the sentencing enhancement should apply is a matter of first impression in this Circuit.

No. 10-31110

I.

Ricardo Nevares-Bustamante, a Mexican citizen, was removed from the United States on March 1, 1989.[1] About one month later, he illegally reentered the United States by walking through the desert near Calexico, California. On November 29, 1990, he was convicted in Missouri of rape and armed criminal action and was sentenced to 18 years in prison. He served the sentence and was released from the Missouri Department of Corrections on August 26, 2008. The United States Border Patrol was not notified of his release, and no removal order had been issued or reinstated following the 1990 conviction. On June 27, 2009, United States Border Control officers found Nevares-Bustamante sleeping behind a restaurant in Lake Charles, Louisiana. He was taken into custody that day.

Nevares-Bustamante pleaded guilty to one count of illegal reentry following deportation in violation of 8 U.S.C. § 1326(a), (b)(2). The presentence report (PSR) recommended enhancing his offense level by 16 levels based on his 1990 Missouri conviction, which the PSR characterized as a crime of violence for purposes of U.S.S.G. § 2L1.2(b)(1)(A)(ii). Nevares-Bustamante objected to the PSR, arguing that the 16-level enhancement did not apply because he was not ordered removed from the United States after his 1990 conviction.

On July 28, 2010, the district court overruled Nevares-Bustamante's objection to the 16-level enhancement. The district court found that, after serving the sentence for his 1990 conviction, Nevares-Bustamante unlawfully remained in the United States for purposes of the sentencing guideline.

During the final sentencing hearing, the district court applied the 16-level enhancement and calculated a guidelines imprisonment range of 77 to 96 months. The district court then sentenced Nevares-Bustamante to 90 months

---

[1] He had been deported twice before, in 1984 after a felony conviction for grand theft auto, and in 1986 after a felony conviction for second degree burglary. The 1989 deportation was based on a third felony conviction, for receiving stolen property.

No. 10-31110

of imprisonment and three years of supervised release. Nevares-Bustamante filed a timely notice of appeal.

## II.

This Court reviews the district court's interpretation of the Sentencing Guidelines de novo.[2]

## III.

On appeal, Nevares-Bustamante contends that the district court erred by enhancing his offense level pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii) (2009) for unlawfully remaining in the United States after a crime-of-violence conviction. Nevares-Bustamante does not dispute that his 1990 Missouri conviction for rape and armed criminal action constitutes a crime of violence under § 2L1.2(b)(1)(A)(ii). Instead, he argues that the 16-level enhancement did not apply to him because no removal order issued after his 1990 conviction, nor had any prior removal order been reinstated. We agree.

Section 2L1.2(b)(1)(A)(ii) provides for a 16-level enhancement "[i]f the defendant . . . unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a crime of violence." The application notes to § 2L1.2 explain that "[a] defendant shall be considered to have unlawfully remained in the United States if the defendant remained in the United States following a removal order issued after a conviction, regardless of whether the removal order was in response to the conviction."[3] We see no inherent inconsistency between the Guideline and the definition of "unlawfully remained" in its application note, so we treat the application note as authoritative.[4]

---

[2] *See United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).

[3] U.S.S.G. § 2L1.2 cmt. n.1(A)(iii).

[4] *See Stinson v. United States*, 508 U.S. 36, 38 (1993).

3

The question then is whether Nevares-Bustamante "remained in the United States *following a removal order issued after a conviction*."[5] This Court has not previously been presented with that question,[6] but a case from the First Circuit is analogous.[7] In that case, the defendant was deported, illegally returned to the United States, and was subsequently convicted of an aggravated felony.[8] Just as in this case, he completed his sentence, was released from custody, and a few months later was arrested and charged with illegal reentry.[9] The Government argued in that case that the defendant "unlawfully 'remained' in the United States *after* his conviction," reasoning that "his initial deportation could serve as the basis for unlawfully remaining in the country *subsequent* to his [aggravated felony] conviction because 8 U.S.C. § 1326(a) constitutes a continuing offense."[10] The First Circuit rejected that argument, holding that the sentencing enhancement did not apply. It reasoned that the Government's reading eliminated any temporal limitations in § 2L1.2, so that "it wouldn't matter whether the [relevant] removal occurred precedent to or subsequent to the conviction. So long as the defendant had been *previously deported*, he would

---

[5] U.S.S.G. § 2L1.2 cmt. n.1(A)(iii) (emphasis added).

[6] The Government points to what it admits is dictum from a Fifth Circuit opinion that appears to reach out and resolve cases like this one. *See United States v. Bustillos-Pena*, 612 F.3d 863, 869 n.3 (5th Cir. 2011). The Government ignores that the discussion in that footnote assumes that a removal order had been issued following the relevant conviction, which was not the case here. The facts of *Bustillos-Pena* gave no occasion for the Court to address the specific circumstance presented here or the application note's particular definition of "unlawfully remained in the United States."

[7] *United States v. Sanchez-Mota*, 319 F.3d 1 (1st Cir. 2002) (per curiam).

[8] *Id.* at 2.

[9] *Id.*

[10] *Id.* Title 8, § 1326(a) forbids an alien who was once removed from the country to return to the United States without special permission.

face a sentencing enhancement if he committed an aggravated felony."[11] The First Circuit further explained that the application note to § 2L1.2 suggests that the enhancement would apply "at most, to an alien who (a) commits an aggravated felony, (b) is then subject to an order of deportation or removal, and (c) doesn't depart but instead remains in the United States unlawfully."[12] In contrast, that defendant, like Nevares-Bustamante, "(a) was removed, (b) returned illegally, and (c) was convicted of [the qualifying offense]."[13] Under the First Circuit's reasoning, the defendant's multiple prior deportations made no difference; the deportation orders prior to his qualifying conviction did not make his subsequent presence in the United States "unlawful" for the purposes of this Guidelines provision. Without a fresh removal order or reinstatement of a prior removal order, the court concluded, the defendant did not "unlawfully remain[] in the United States following a removal order issued after a conviction."[14] We find the First Circuit's reasoning persuasive, and we adopt it here.

The Government's response to the First Circuit's reading is a textual argument based on the indefinite article "a" preceding the word "conviction" in the application note. To repeat, the application note to § 2L1.2 provides that "[a] defendant shall be considered to have unlawfully remained in the United States if the defendant remained in the United States following a removal order issued after *a* conviction, regardless of whether the removal order was in response to the conviction."[15] In the Government's view, the application note does not specify whether the "conviction" that precedes the removal order must necessarily be the same conviction on which the enhancement is predicated. The

---

[11] *Id.* at 3.

[12] *Id.*

[13] *Id.*

[14] U.S.S.G. § 2L1.2 cmt. n.1(A)(iii).

[15] *Id.* (emphasis added).

Government suggests that the indefinite article "a" before the word "conviction" means that *any* prior conviction could serve to predate the removal order, even if it's not the qualifying conviction.[16]  Moreover, according to this argument, it would not matter that the prior removal order was unconnected to the predicate conviction because the removal order need not be "in response to the [enhancement-qualifying] conviction."[17]  All three of Nevares-Bustamante's prior convictions were for aggravated felonies, and he was ordered removed after each of them.[18]  Even though those convictions are not the basis for the enhancement, the Government contends that they meet the application note's requirement of *a* conviction preceding a removal order.[19]

Seemingly persuasive because of its reliance on the plain terms of the Guideline and its application note, the Government's reading actually betrays their language.  As it gives a robust meaning to the indefinite "a," the Government's interpretation robs any meaning from the arguably more important word "remain," at least as applied to Nevares-Bustamante.  What could it mean to "unlawfully *remain*[] in the United States . . . following a removal order" if the defendant was in fact removed pursuant to that order? Nevares-Bustamante *did* leave the United States each time he was ordered removed.  To say that he "unlawfully remained" here because he came back later deprives the word "remain" of its natural meaning.

---

[16] The Government did not make this argument in the First Circuit case because there were no convictions preceding that defendant's prior removal orders.

[17] U.S.S.G. § 2L1.2 cmt. n.1(A)(iii).

[18] *See supra* note 1 and accompanying text.

[19] In addition to the textual analysis, there is some historical support for the Government's position.  At one time, § 2L1.2 more clearly tied a removal order to the predicate felony conviction. *See* U.S.S.G. § 2L1.2 cmt. n.1 (1997) ("Remained in the United States following a removal order issued after a conviction," means that the removal order was subsequent to *the* conviction, whether or not the removal order was in response to *such* conviction." (emphasis added)).

No. 10-31110

In sum, we hold that a defendant alleged to have unlawfully remained in the United States following a qualifying conviction under U.S.S.G. § 2L1.2(b)(1)(A) is subject to the § 2L1.2(b)(1)(A) enhancement only when a removal order is issued or reinstated after that conviction.

IV.

Mr. Nevares-Bustamante's sentence is VACATED, and this case is REMANDED for a new sentencing proceeding consistent with this Court's opinion.

HAYNES, Circuit Judge, specially concurring:

Using only the language of the Guideline, it would seem that Nevares-Bustamante "unlawfully remained in the United States" after a qualifying conviction. U.S.S.G. § 2L1.2(b)(1)(A). He was convicted of a "crime of violence," he was discharged from prison, and he "remained" in the United States—without any permission from the Attorney General or any other semblance of legal authority—for almost a year after his release. If we could stop there, we would likely affirm.

What causes this case to be more complex is the language of the application note: "[a] defendant shall be considered to have unlawfully remained in the United States if the defendant remained in the United States following a removal order issued after a conviction, regardless of whether the removal order was in response to the conviction." *Id.* § 2L1.2 cmt. n.1(A)(iii). I agree that Nevares-Bustamante did not "remain" in the United States following the issuance or reinstatement of a removal order; he left each time he previously was ordered removed, returning only later. Thus, under the application note, we should reverse.

Faced with two potentially contradictory outcomes, we must decide whether the application note is authoritative here. *Stinson* holds that commentary such as the application note are authoritative unless "inconsistent with, or a plainly erroneous reading of" the Guideline. *See Stinson v. United States*, 508 U.S. 36, 38 (1993). The question then becomes whether the note is, in fact, inconsistent with or a plainly erroneous reading of the Guideline.

I conclude that it is not. As construed by the majority opinion, the application note provides a definition of "unlawfully remained" that is consonant with the Guideline, objective, and relatively easy to verify. Requiring the issuance or reinstatement of a removal order also avoids the necessity of mining the murky depths of immigration law to determine the "unlawfulness" of a defendant's "remaining." As such, I cannot find the application note to be

"inconsistent" or "plainly erroneous," although I do find it somewhat conceptually incongruous with a commonsense understanding of what it means to "unlawfully remain in the United States" after a conviction. Mindful of *Stinson*'s teaching, however, I am obliged to concur in the majority's opinion.[1]

---

[1] *Stinson* also provides that Guidelines commentary "is authoritative unless it violates the Constitution or a federal statute." 508 U.S. at 38. The Government made no argument that the application note runs afoul of this aspect of *Stinson*'s holding. Accordingly, neither the majority opinion nor this concurrence addresses whether the application note at issue here may "violate[] the Constitution or a federal statute." *Id.*