GORSUCH, Circuit Judge,
dissenting:
In the richness of the English language, few things can create as much mischief as piling prepositional phrase upon prepositional phrase. The child says, “I saw the man on the hill with the telescope.” Did the child use the telescope to see the man on the hill? Or did the child see a man— or even a hill — bearing a telescope? A newspaper headline heralds, “Brothers Reunited after 20 Years on a Roller Coaster.” Did the brothers recently bump into each other at an amusement park? Or were they the long suffering experimental subjects of some evil genius?
Of course, we’re all guilty of venial syntactical sins. And our federal government can claim no exception. Which takes us to USSG § 2L1.2(b)(l) and this jumble of prepositional phrases—
If the defendant previously was deported, or unlawfully remained in the United States, after—
*1356 (A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded thirteen months ... [add a sentencing enhancement].
This has to be a sentence only a grammar teacher could love. We have here our old nemesis the passive voice, followed by a scraggly expression of time (“previously ... after”), then a train of prepositional phrases linked one after another and themselves rudely interrupted by a pair of parenthetical punctuations.
Happily, our role isn’t to grade the grammar, only discern the meaning. And often a speaker’s meaning can be clear even when his grammar isn’t. We know from context what the child means when talking about the telescope (because background knowledge tells us, say, that the child has a telescope and the man and hill do not). Context likewise explains what the newspaper is getting at (because, for example, the first sentence of the article makes clear the brothers hadn’t seen each other in years). Even when the grammar’s gnarled, meaning often can be straightforward enough.
And that well describes this case. At first blush, one might wonder whether only a conviction for a drug trafficking felony must precede a defendant’s deportation — or whether the conviction and the imposition of a full 13 month sentence must both predate the deportation. The grammar and language of the guideline provision before us supply ample support for each of these competing readings. But, as with much in life, when we bother to consult the directions (the relevant context in this case), what at first appears confusing proves disarmingly simple.
First, though, the jumble of parts that creates the confusion.
The prepositional phrase that’s the focus of our attention — “for which the sentence imposed exceeded thirteen months”— comes at the caboose of the prepositional train. It modifies the prepositional phrase just before it, describing the nature of the required felony — “for a felony that is a drug trafficking offense” — that itself modifies an even earlier prepositional phrase— “after a conviction” — that, finally, modifies the phrase “was deported.” From all this, we can be sure that the deportation must come after a conviction for a drug trafficking felony. But we can have no similar confidence that the “sentence imposed” must. After all, the prepositional phrase discussing the “sentence imposed” is not the next car in the prepositional train, or even the one after that, but two modifying phrases away.
The parenthetical punctuation only serves to accentuate the grammatical ambiguity. “[D]eported ... after — (A) a conviction for a felony” tells us in no uncertain terms that the deportation has to come after a felony conviction. But then the nature of both the felony and its sentence appear in a separate, punctuationally pronounced, subsection: “that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months.” Here again the time specification (“after”) is separated, not just grammatically now but also by punctuation, from the “sentence imposed.”
Neither does verb tense help much. True, the guideline asks us whether the “sentence imposed exceeded thirteen months,” but the use of the past tense does not necessarily mean that a defendant’s sentence must have exceeded 13 months at the time of deportation. The guidelines are, after all, written for application by a federal sentencing judge. And it’s equally plausible to read this phrase as referring to any sentence imposed before the time of sentencing in the federal illegal reentry case. This reading finds further support *1357 in the fact that the guideline introduces the type of conviction needed to trigger the enhancement with the present tense verb “is.” This suggests that a conviction might qualify for enhancement if it is — at the time the district court sentences the defendant — “a drug trafficking offense for which the sentence imposed exceeded 13 months.”
When we open the box and find we can’t make sense of the cascade of parts flowing from it, sometimes it helps to consult the accompanying directions. And here the sentencing commission’s commentary on how to apply its guidelines provides just the guidance we need. The commentary expressly instructs us that in calculating the “length of the sentence imposed” — in determining whether the sentence imposed exceeded 13 months — we must include “any term of imprisonment given upon revocation of probation, parole, or supervised release.” USSG § 2L1.2, Application Note l(B)(vii) (emphasis added). The term “any” tells us to account not for some probation revocation sentences but “every” or “all” probation revocation sentences, “of whatever kind.” Webster’s Third New International Dictionary 97 (2002).
So it is the compositional cloud now lifts. We know that deportation must come after a conviction. That conviction must be for a felony drug trafficking offense. And that offense must result in a sentence greater than 13 months. But in figuring the length of the sentence we can now be sure that we must include “any terms of imprisonment given upon revocation of probation, parole, or supervised release.” In this case, of course, that means Mr. Rosales was indeed eligible for a sentencing enhancement. In total and eventually, his sentence for a drug trafficking felony well exceeded 13 months. So the district court got it right and should be affirmed. Of course, contrary arguments can be— and have been — made about the guideline’s meaning. But, to my mind, a careful inspection of them only serves to confirm the correctness of the district court’s course.
Some say that the guideline is “most naturally” read to require the “sentence imposed” to come “after” a deportation (or, presumably, after the defendant remained in the country illegally). See, e.g., United States v. Bustillos-Pena, 612 F.3d 863, 867 (5th Cir.2010); Maj. Op. at 1351 et seq. Yet, as we have just seen, the commission’s grammar and punctuation — independently and together — suggest the plausible, alternate reading that the “after” time limit applies only to the conviction, not the sentence imposed. And where, as here, a guideline is susceptible to two plausible readings, it is the commission in its commentary, not a court in its opinion, that gets to say what the provision “most naturally” means. The Supreme Court has repeatedly emphasized just this point, instructing that the sentencing commission’s commentary resolving ambiguities in the guidelines must be treated as “authoritative.” Stinson v. United States, 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993).
To this, some respond that the commentary doesn’t speak to the question before us. They suggest that the commentary tells us only that in applying the guideline courts may look to “all of the defendant’s convictions prior to his illegal reentry.” Maj. Op. at 1352; see also id. at 1352-54; cf. United States v. Lopez, 634 F.3d 948, 952-53 (7th Cir.2011). But the problem with this argument is that it reads into the commentary limiting language that simply isn’t there. The commentary does not say that the “sentence imposed” includes only time served “prior to his illegal reentry.” In fact, the commentary tells us exactly *1358 the opposite. It instructs that, when calculating the “length of the sentence imposed,” we are to take account of “any term of imprisonment given upon revocation.” And that plain direction tells us all we need to know.[1]
Retreating from the language of the guideline and commentary, some say that sound policy would be better served by limiting § 2L1.2’s enhancement only to defendants who were sentenced to more than thirteen months prior to deportation. Only pre-deportation prison time, the argument goes, is a valid measure of the seriousness of the underlying felony. Post-deportation revocation sentences are only “technically imposed” as part of the “earlier felony.” Maj. Op. at 1354; Bustillos-Pena, 612 F.3d at 867; Lopez, 634 F.3d at 951. This argument, however, simply mistakes our role. Sentencing courts may of course choose to vary from the guidelines, but that doesn’t mean we may rewrite them or their commentary to suit our penological preferences. See United States v. Dozier, 555 F.3d 1136, 1141 (10th Cir.2009). Neither, for that matter, is it clear why prudent penological policy would distinguish between pre- and post-deportation sentences. An infraction that causes a court to impose a revocation sentence would, after all, seem to be no less serious after deportation than before. Nor could one plausibly suggest that we should ignore probation revocation sen-fences altogether when trying to measure the seriousness of the defendant’s offense. We’ve long rejected precisely this view, explaining that “[a] defendant who does not abide by the terms of his probation ... demonstrate^] that he should not have been given probation in the first place” and merits instead the full prison term he is (eventually) required to serve. United States v. Ruiz-Gea, 340 F.3d 1181, 1186 (10th Cir.2003) (quotation omitted).
Some say that restricting our attention to time served prior to the defendant’s deportation (or unlawfully remaining in the country) is necessary to avoid “disparate” treatment between similarly situated individuals. See Maj. Op. at 1351; BustillosPena, 612 F.3d at 867-68; Lopez, 634 F.3d at 952. On this line of thinking, it is unjust that the application of a sentencing enhancement might turn on whether state or federal officials happen to collar the defendant first. But this objection once again mistakes the nature of our role in interpreting the guidelines, failing to abide the fact that “the possibility of anomalous results is no[ ] reason to” rewrite the sentencing commission’s guidance. See Dozier, 555 F.3d at 1141. Neither, for that matter, is it apparent that there’s even a meaningful anomaly to worry about in the first place. Federal sentencing law usually ‘affords special consideration to state criminal convictions as a matter of comi *1359 ty — and does so even in cases of overlapping jurisdiction where the federal sentencing result would’ve been different if federal (rather than state) authorities had caught the offender first. Besides, under § 2L1.2, a federal sentencing court has ample discretion to address any fairness concerns whenever the strict application of the enhancement provision results in an “overstate[ment]” of the seriousness of a defendant’s prior conviction. USSG § 2L1.2, Application Note 7.
Finally, some say the rule of lenity should play a role in how we read the guideline provision before us. See Bustillos-Pena, 612 F.Bd at 868-69. But whatever role the rule plays in the sentencing (as opposed to conviction) context, it isn’t triggered unless an interpretive ambiguity persists after “seizing every thing from which aid can be derived.” Smith v. United States, 508 U.S. 223, 239, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) (quotation marks and alterations omitted). And, again, that’s just not our case after taking into account the sentencing commission’s (authoritative) directions in its commentary.
In these ways then, the common objections to the district court’s course in this case, at best, do nothing to call it into question — and, at worst, they actually tend to confirm that the district court was right on target.
Still, one final observation, really a plea, a plea for syntactical assistance, is in order. Though the guideline’s meaning comes clear from the commission’s commentary, there’s no getting around the fact that the guideline’s snarl of prepositional phrases has managed to tie us circuit judges in knots. Some read the provision as I do, see United States v. Compres-Paulino, 393 F.3d 116, 118 (2d Cir.2004) (per curiam); Bustillos-Pena, 612 F.3d at 869-70 (Clement, J., dissenting); others read it as my colleagues do, see Lopez, 634 F.3d at 949; United States v. Guzman-Bera, 216 F.3d 1019, 1020-21 (11th Cir.2000). And who’s right and who’s wrong about all this may be ultimately less important than the fact we’re unable to agree. Because of our disagreement, similarly situated defendants receive different sentences only because of the happenstance of the circuit in which they sit. And this is surely among the most unfortunate possible sentencing anomalies of all. One thing everyone concerned might agree on is that it would be a welcome thing indeed if the sentencing commission would intervene to loosen the knot we have tied, set us aright in the application of § 2L1.2, and in this way help ensure the consistent treatment of those who appear before the federal courts.

. The majority seeks to justify reading its new and very different language into the commentary based on historical inferences. The majority points out that, in adopting the 2003 amendment, the sentencing commission said its amendment was "consistent” with four circuit cases allowing the aggregation of original and pre-deportation revocation sentences. Maj. Op. at 1352-53. But, as the majority concedes, those cases didn’t address, one way or the other, post-deportation revocation sentences. Thus, by their terms they tell us precisely nothing about the question before us. Separately, the majority says the commission neglected to cite one circuit case that did discuss post-deportation revocation sentences. But what inference, if any, should be drawn from this oversight is anyone’s guess. Still, this much has to be true: any such guesswork cannot justify overriding the plain language of the commentary and the explanatory note accompanying the commission's adoption of the commentary — both of which unambiguously direct us to take account of “any ” probation revocation sentence, without regard to any time limit. See U.S.S.G. App. C., Vol. II, Amendment 658 (Nov. 1, 2003).