**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 19 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ISAAC BARDO RUIZ-GEA,

Defendant-Appellant.

No. 01-4242

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH
### (D.C. NO. 2:01-CR-209-ST)

Scott Keith Wilson, Assistant Federal Public Defender (Steven B. Killpack, Federal Public Defender, with him on the briefs), Salt Lake City, Utah, for Defendant-Appellant.

Diana Hagen, Assistant United States Attorney (Paul M. Warner, United States Attorney, and Laurie J. Sartorio, Assistant United States Attorney, on the brief), Salt Lake City, Utah, for Plaintiff-Appellee.

Before **MURPHY** , **McWILLIAMS** , and **HARTZ** , Circuit Judges.

**HARTZ** , Circuit Judge.

Defendant Isaac Bardo Ruiz-Gea appeals the sentence imposed following his guilty plea to illegal reentry of a deported alien, in violation of 8 U.S.C.

§ 1326. The principal issue on appeal is the proper interpretation of a provision in the United States Sentencing Guidelines relating to Defendant's offense. USSG § 2L1.2(b)(1)(A)(i), states: "If the defendant previously was deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a drug trafficking offense for which the sentence imposed exceeded 13 months . . ., increase [the offense level] by 16 levels[.]" Defendant contends that this provision does not apply to him because he did not receive a sentence exceeding 13 months until his probation on a state drug–trafficking offense was revoked following his unlawful reentry. He also contends that the district court erred by adding one point to his criminal history score based on its finding that he committed the reentry offense less than two years after his release from confinement on the prior drug-trafficking conviction, *see* USSG § 4A1.1(e). We exercise jurisdiction under 18 U.S.C. § 3742(a) and affirm.

I. **BACKGROUND**

In 1997 Defendant, a Mexican citizen, was convicted by a Utah state court of attempted distribution of a controlled substance. He was sentenced on July 17, 1997, to imprisonment for 1 to 15 years, but the sentence was suspended, with the court ordering him to serve 90 days in jail and placing him on probation for 36 months. Shortly thereafter he was released to the custody of the Immigration and

Naturalization Service (INS). The INS deported him to Mexico on July 30, 1997, and ordered him not to return.

At some point Defendant reentered the United States. He was arrested in Utah in August 1998 for possession of a controlled substance, and again in December 1998 for interfering with a lawful arrest. On June 20, 2000, the Utah state court revoked his probation for the 1997 controlled-substance offense and reimposed the original 1- to 15-year prison sentence. Defendant apparently remained in state custody for 13 months. He was then released to the custody of the United States for prosecution of the present case.

On April 11, 2001, Defendant was charged in a one-count indictment with having been unlawfully "present and . . . found" in the United States following a deportation. Defendant pleaded guilty to the indictment, and on November 7, 2001, was sentenced to 57 months' imprisonment, to be followed by 36 months' supervised release. In calculating the sentence under the 2001 edition of the Sentencing Guidelines (which had become effective six days prior to sentencing in this case), the district court determined that the sentence imposed for Defendant's 1997 controlled-substance conviction exceeded 13 months. It therefore increased Defendant's base offense level by 16 levels as mandated by USSG § 2L1.2(b)(1)(A)(i). The court also added a criminal history point under USSG § 4A1.1(e), based on its finding that Defendant committed the offense of

illegal reentry within two years of his release from prison on the 1997 conviction. Defendant now challenges those rulings.

## II. DISCUSSION

### A. Enhancement for prior conviction under § 2L1.2(b)(1)(A)(i)

Defendant contends that the district court erred in using his 1997 controlled-substance conviction to enhance his sentence under USSG § 2L1.2(b)(1)(A)(i). Section 2L1.2—entitled "Unlawfully Entering or Remaining in the United States"—instructs the district court to increase a defendant's base offense level by 16 levels "[i]f the defendant previously was deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a drug trafficking offense for which the sentence imposed exceeded 13 months[.]" USSG § 2L1.2(b)(1)(A)(i). By contrast, when a defendant is deported after a drug-trafficking conviction "for which the sentence imposed was 13 months or less," the offense level is increased by 12 levels. *Id.* § 2L1.2(b)(1)(B). Application note 1(A)(iv) to the guideline states: "If all or any part of a sentence of imprisonment was probated, suspended, deferred, or stayed, 'sentence imposed' refers only to the portion that was not probated, suspended, deferred, or stayed." *Id.* § 2L1.2, comment. (n.1(A)(iv)).

Defendant does not contest that his 1997 conviction was a "drug trafficking offense." But he argues that the "sentence imposed" for that conviction did not

exceed 13 months because initially the 1- to 15-year prison term was suspended and he was ordered to serve only 90 days in jail. Although he acknowledges that the 1- to 15-year term was ultimately imposed when his probation was revoked in June 2000, he contends that this is irrelevant under the guideline. He appears to make two related arguments in support of this contention: (1) he construes application note 1(A)(iv) to say that suspended sentences that are ultimately imposed are not part of the "sentence imposed"; and (2) he contends that because the 1- to 15-year sentence was imposed *following* his deportation, he was not "deported . . . *after* . . . a conviction . . . for which the sentence imposed exceeded 13 months[,]" USSG § 2L1.2(b)(1)(A)(i) (emphasis added). Before addressing these arguments, we must determine our standard of review.

1. Standard of review

Ordinarily, "[t]he district court's interpretation of the sentencing guidelines is a legal question subject to *de novo* review." *United States v. Castro-Rocha*, 323 F.3d 846, 848-49 (10th Cir. 2003). De novo review is appropriate, however, only if the issue was raised below. Defendant contends that he raised below the "functional equivalent" of his appellate arguments by arguing at sentencing that the length of the sentence imposed for the 1997 conviction warranted a downward departure under former application note 5 to § 2L1.2 of the *2000* edition of the Sentencing Guidelines. Aplt.'s Opening Br. at 5. That application note allowed

downward adjustments from the presumptive offense level set forth in § 2L1.2 upon the satisfaction of certain conditions, including that the term of imprisonment imposed for the prior aggravated-felony conviction did not exceed one year.  *See* USSG § 2L1.2, comment. (n.5) (2000).  But Defendant was sentenced under the *2001* Guidelines—at the insistence of his trial counsel, who successfully sought postponement of Defendant's sentencing hearing until the 2001 Guidelines became effective—and those Guidelines contained a completely rewritten version of § 2L1.2 and accompanying commentary.  Defendant made no argument addressed to the text of the 2001 version of § 2L1.2 and its new application note 1(A)(iv).  In any event, the only statement below that resembles his contentions on appeal was his assertion, without argument, that his state sentence was for only 90 days; he made no argument regarding the timing of the probation revocation in relation to his deportation.  His appellate arguments not having been raised below, our review is only for plain error.  *See United States v. Whitney*, 229 F.3d 1296, 1308 (10th Cir. 2000).

To establish plain error, Defendant "must show:  (1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affect[s] substantial rights.  If these three elements are satisfied, then we may exercise discretion to correct the error if it seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."  *Id.*  (internal quotation marks and

citations omitted; alterations in the original). Although "basing a sentence on the wrong guideline range constitutes a fundamental error affecting substantial rights . . . , thereby satisfying the third prong of the plain error inquiry," *id.* at 1308-09 (internal quotation marks omitted), Defendant still must show that "if there was error, it was plain," *id.* at 1309. Our standard of review settled, we now turn to Defendant's arguments.

### 2. What was the "sentence imposed"?

According to Defendant, under § 2L1.2(b)(1)(A)(i) and its commentary the district court should have considered only the 90-day sentence *originally* imposed for his 1997 drug-trafficking conviction, ignoring the fact that the suspended sentence was subsequently imposed when he violated his probation. We disagree.

Section 2L1.2(b)(1)(A)(i) speaks of a "conviction . . . for which the sentence imposed exceeded 13 months." The sentence imposed after revocation is imposed for the original conviction. As the Supreme Court recently explained: "A suspended sentence is a prison term imposed for the offense of conviction. Once the prison term is triggered, the defendant is incarcerated not for the probation violation, but for the underlying offense." *Alabama v. Shelton*, 535 U.S. 654, 662 (2002).

Application note 1(A)(iv), on which Defendant relies, does not address how to treat an initially suspended sentence that is imposed upon the revocation of

probation. It says only: "If all or any part of a sentence of imprisonment was probated, suspended, deferred, or stayed, 'sentence imposed' refers only to the portion that was not probated, suspended, deferred, or stayed." USSG § 2L1.2, comment. (n.1(A)(iv)). Upon revocation of probation, however, Defendant's sentence was no longer "suspended."

We agree with the other two circuits that have discussed the matter. In *United States v. Compian-Torres*, 320 F.3d 514, 515 (5th Cir. 2003), the Fifth Circuit wrote: "The Commentary [*i.e.,* application note 1(A)(iv)] applies to probated sentences, not probation revocations. . . . A sentence imposed on revocation is actually 'imposed' as described in the Guideline and not 'probated' as excepted in the Commentary." The court concluded, "An interpretation of 'sentence imposed' as 'sentence originally imposed' is untenable." *Id.* Similarly, in *United States v. Moreno-Cisneros*, 319 F.3d 456, 458 (9th Cir. 2003), the Ninth Circuit said, "[T]he Guideline and application note . . . do not limit the sentence imposed to the sentence as it was originally imposed, and we can see no reason to infer such a limitation from the wording of the provisions."

Moreover, including the sentence imposed upon revocation of probation as part of the "sentence imposed" for the purposes of § 2L1.2(b)(1)(A)(i) is consistent with how such sentences have been treated under other provisions of § 2L1.2. In *United States v. Hidalgo-Macias*, 300 F.3d 281 (2d Cir. 2002), the

Second Circuit construed § 2L1.2(b)(1)(C), which mandates an eight-level enhancement for defendants deported after a conviction for an "aggravated felony" (defined to include certain offenses for which the "term of imprisonment [is] at least one year," 8 U.S.C. § 1101(a)(43)(G)). The defendant had initially been sentenced to six months' incarceration plus five years' probation on a prior state-court conviction; after he violated his probation, however, the probationary sentence was revoked and he was sentenced to one year in jail. The defendant argued that the sentence imposed upon revocation of his probation should not be considered part of the sentence imposed for that crime, and that only the "initial sentence imposed" should be considered under the guideline. *Hidalgo-Macias*, 300 F.3d at 285. The Second Circuit rejected the argument, holding that "the imposition of a sentence of imprisonment following revocation of probation is a modification of the original sentence, and must be considered part of the 'actual sentence imposed' for the original offense." *Id*. The Ninth Circuit agrees. *See United States v. Jimenez*, 258 F.3d 1120, 1125-26 (9th Cir. 2001).

We are not persuaded by Defendant's policy argument that the 16-level enhancement is reserved for only the most serious prior convictions, and "a later probation revocation sentence is not relevant to the seriousness of th[e] offense." Aplt.'s Opening Br. at 10. As the Ninth Circuit stated:

> [W]e can discern no basis for treating an original sentence of over thirteen months incarceration as more serious than a sentence of over

thirteen months incarceration that consists of the original sentence plus the result of the revocation of probation. A defendant who does not abide by the terms of his probation has demonstrated that he should not have been given probation in the first place.

*Moreno-Cisneros*, 319 F.3d at 458.

Finally, although not determinative, our interpretation of the guideline provision is consistent with a clarifying amendment to § 2L1.2 that the United States Sentencing Commission submitted to Congress on May 1, 2003. Unless modified or rejected by Congress, the amendment will take effect on November 1, 2003. The amendment would delete the current application note 1(A)(iv), and replace it with a new application note 1(B)(vii), to read:

> 'Sentence of imprisonment' has the meaning given that term in Application Note 2 and subsection (b) of § 4A1.2 (Definitions and Instructions for Computing Criminal History), without regard to the date of the conviction. *The length of the sentence of imprisonment includes any term of imprisonment given upon revocation of probation, parole, or supervised release.*

Sentencing Guidelines for United States Courts, 68 Fed. Reg. 26,960-01, 26,974 (May 16, 2003) (emphasis added). The Sentencing Commission explained that its "approach in clarifying this definition is consistent with the case law interpreting the term and the use of the term in Chapter Four of the guidelines." *Id.*

We conclude that the district court did not err when it considered the 1- to 15-year sentence imposed upon revocation of Defendant's probation to be part of

-10-

the "sentence imposed" for the 1997 drug-trafficking offense.  Thus, there was no plain error.

### 3.  Timing of the imposition of sentence

Defendant also argues that he was not "deported . . . *after* . . . a conviction for a felony that is . . . a drug-trafficking offense for which the sentence imposed exceeded 13 months[.]"  USSG § 2L1.2(b)(1)(A)(i) (emphasis added).  He relies on the fact that the 1- to 15-year sentence for his 1997 drug-trafficking conviction was not imposed until his probation was revoked in June 2000, after his deportation.  According to Defendant:

> The plain language of the guideline refers to a conviction and sentence which was imposed prior to the deportation underlying the re-entry offense, and the imposition of a longer sentence based on a probation violation should not be considered.  By explicitly limiting application of § 2L1.2(b)(1)(A) to re-entry following a deportation which takes place "after" a sentence longer than 13 months, this guideline, by its terms, does not apply when the sentence of over 13 months is only imposed after the re-entry offense has taken place. [Defendant] was not deported "after" the imposition of the longer sentence, and § 2L1.2(b)(1)(A) therefore does not apply to him.

Aplt.'s Opening Br. at 7-8.

Defendant's argument is based upon a plausible reading of the guideline.  But because Defendant did not raise this argument below, we can grant him relief only if the sentencing error was plain—that is, if the error was "clear or obvious under current law." *Whitney*, 229 F.3d at 1308 (internal quotation marks omitted). "An error is clear and obvious when it is contrary to well-settled law." *Id.* at

-11-

1309. In general, for an error to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue. *See id.* (finding no plain error in interpretation of guideline provision when neither Supreme Court nor Tenth Circuit had directly addressed the issue). The absence of such precedent will not, however, prevent a finding of plain error if the district court's interpretation was "clearly erroneous." *See United States v. Brown*, 316 F.3d 1151, 1158 (10th Cir. 2003) (internal quotation marks omitted) (the district court's error was "plain" when guideline "clearly and obviously" was limited to a single interpretation, despite the absence of circuit precedent).

There is no Supreme Court or Tenth Circuit precedent addressing enhancements under the present version of § 2L1.2 on facts similar to those presented here— *i.e.*, when an initially suspended sentence is reinstated *after* deportation and illegal reentry. Nor have we found such precedent in other circuits. *But cf. United States v. Guzman-Bera*, 216 F.3d 1019, 1021 (11th Cir. 2000) (per curiam) (under prior version of § 2L1.2, aggravated-felony enhancement did not apply when defendant was initially sentenced to probation (without a suspended sentence), because subsequent revocation and imposition of prison term did not occur until *after* defendant's deportation and illegal reentry); *Jimenez*, 258 F.3d at 1125-26 (dictum to same effect)

In our view, Defendant's reading of § 2L1.2(b)(1)(A)(i) is not compelled. First, the provision speaks of deportation "after . . . a *conviction*," not "after *imposition of sentence*." Second, it is not immediately obvious that the purpose of the enhancement would be undermined by applying it in the circumstances of this case. The provision derives from 8 U.S.C. § 1326(b)(2), which increases the penalty for illegal reentry when the alien had been convicted of an aggravated felony prior to deportation. There is some doubt regarding which interpretation of § 2L1.2(b)(1)(A)(i) would best serve the purposes of § 1326(b)(2). Third, the guideline provides for the enhancement if the defendant "was deported, *or unlawfully remained in the United States*, after . . . a conviction for a felony . . . ." USSG § 2L1.2(b)(1)(A)(i) (emphasis added). Defendant has presented no argument regarding how to construe the "unlawfully remained" language or its applicability here.

A careful examination of the context and purposes of § 2L1.2 might convince us that Defendant's interpretation is the correct one. What we cannot say, however, is that the district court was clearly wrong. *See Whitney*, 229 F.3d at 1309 (finding error, if any, not "plain," even though Tenth Circuit in dictum, Seventh Circuit, and Black's Law Dictionary indicated that guideline should be construed in a manner contrary to district court's application of guideline).

Defendant urges us to adopt his interpretation by applying the rule of lenity, which instructs courts to interpret ambiguous criminal statutes favorably to the accused. *See United States v. Gay*, 240 F.3d 1222, 1232 (10th Cir. 2001). But the rule of lenity is applied only when all other techniques for statutory construction leave the court in equipoise. *Muscarello v. United States*, 524 U.S. 125, 138 (1998) ( "The rule of lenity applies only if, after seizing everything from which aid can be derived, . . . we can make no more than a guess as to what Congress intended." (internal quotation marks omitted; ellipses in the original)). When the choice between two possible meanings of a statute is so open to debate that the rule of lenity comes into play, one can hardly say that either interpretation is *plainly* wrong. We see no role for the rule of lenity in determining whether there was plain error below.

We hold that the district court did not plainly err when it enhanced Defendant's sentence 16 levels under USSG § 2L1.2(b)(1)(A)(i).

B. Enhancement under USSG § 4A1.1(e)

Defendant argues that the district court erred in adding one point to his criminal history score under USSG § 4A1.1(e), which instructs the court to add one or two criminal history points "if the defendant committed the instant offense *less than two years after release from imprisonment on a sentence* [of at least 60 days]." USSG § 4A1.1(e) (emphasis added). The district court added one point

-14-

under this subsection based on its finding that Defendant committed the reentry offense within two years of his release from prison for the 1997 state drug-trafficking offense. (The district court assessed one criminal history point rather than two because it had previously added two points to Defendant's criminal history score under § 4A1.1(d), for committing the offense while on probation. *See* § 4A1.1(e) ("If 2 points are added for item (d), add only 1 point for this item.").) Defendant contends that this finding was clearly erroneous. *See United States v. McClatchey*, 316 F.3d 1122, 1128 (10th Cir. 2003) (sentencing court's fact findings are reviewed for clear error). We disagree.

Defendant was convicted of attempted distribution of a controlled substance, sentenced for that crime on July 17, 1997, and deported to Mexico on July 30, 1997. Thus, to properly assess a criminal history point under § 4A1.1(e), the district court had to find that Defendant committed the crime of unlawful reentry by July 1999, two years after his "release from imprisonment."

According to the indictment to which Defendant pleaded guilty, Defendant was unlawfully "found" in the United States "[o]n or about March 5, 2001," in violation of 8 U.S.C. § 1326. R., Vol. I, Doc 1, at 1. Although the offense of illegal reentry may have been completed on that date, *see United States v. Rosales-Garay*, 283 F.3d 1200, 1202-03 (10th Cir. 2002), the district court was not foreclosed from finding that Defendant's commission of the offense began at an

earlier point. "[A] previously deported alien who illegally enters and remains in the United States can violate the statute at three different points in time, namely, when the alien (1) 'enters,' (2) 'attempts to enter,' or (3) is at any time 'found in' the United States." *Id.* at 1202. In the case of a surreptitious reentry like Defendant's, "the 'found in' offense is first committed at the time of the reentry and continues to the time when the defendant is arrested for the offense." *United States v. Lopez-Flores*, 275 F.3d 661, 663 (7th Cir. 2001) (collecting cases); *accord United States v. Mendez-Cruz*, 329 F.3d. 885, 889 (D.C. Cir. 2003). Moreover, the guideline commentary states that criminal history points should be added under § 4A1.1(e) "if the defendant committed *any part of the instant offense* (*i.e.*, any relevant conduct) less than two years following release from confinement" for a countable prior offense. USSG § 4A1.1, comment. (n.5) (emphasis added). Reentry prior to being "found" clearly constituted a "part" of Defendant's offense.

The record contains ample evidence to support the district court's finding that Defendant reentered the United States within two years of July 1997. The Presentence Report (PSR) shows that Defendant was arrested twice in Utah in 1998: once on drug charges on August 21, 1998, and once for interfering with a lawful arrest on December 13, 1998. Defendant does not dispute that these arrests occurred; nor does he assert that he left the United States and then reentered after

these arrests. Based on the facts stated in the PSR, the district court found that the evidence was "overwhelming" that Defendant committed his offense within two years of his release from confinement for his July 1997 drug-trafficking conviction. R., Vol. III, at 8. Of course, the court was not required to find that the evidence was overwhelming; it needed only to be convinced by the preponderance of the evidence. *See United States v. Yates*, 22 F.3d 981, 989 (10th Cir. 1994) (contested facts at sentencing need only be established by preponderance of the evidence). The district court's finding was not clearly erroneous. We therefore conclude that it properly added one point to Defendant's criminal history under § 4A1.1(e).

## III. **CONCLUSION**

We AFFIRM the judgment of the district court.

*United States v. Ruiz-Gea*, No. 01-4242

**McWilliams**, Judge, Dissenting.


There apparently is no binding 10th Circuit authority on the primary issue in this case. Hence, we are writing on a "clean slate," so to speak. I am simply not in accord with the result reached in *United States v. Compian-Torres*, 320 F.3d 514 (5th Cir. 2003) or in *United States v. Moreno-Cisneros*, 319 F.3d 456 (9th Cir. 2003). I am in complete accord with Judge Fletcher's dissent in *Moreno-Cisneros*. My view on this matter is well summarized in the final paragraph of Judge Fletcher's dissent in *Moreno-Cisneros,* 319 F.3d at 464, where he spoke as follows:


"This is (or should be) an easy case. The amended Guideline, Sec.
2L1.2(b)(1) contains a new phrase, "sentence imposed," that is
carefully defined in Application Note 1(A)(iv). The phrase, as
defined in the Note, has a plain meaning that excludes suspended
sentences. I regret that the majority is unwilling to follow that plain
meaning."