FILED
United States Court of Appeals
Tenth Circuit

February 7, 2012

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENID CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RAUL ROSALES-GARCIA,

Defendant-Appellant.

No. 10-4224

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 1:10-CR-00019-TS-1)**

Benjamin McMurray, Assistant Federal Defender, Salt Lake City, Utah, (Steven B. Killpack, Utah Federal Defender and Scott Keith Wilson, Assistant Federal Defender, with him on the brief), for the Appellant.

Dave Backman, Assistant United States Attorney, Salt Lake City, Utah, (Carlie Christensen, United States Attorney, with him on the brief), for the Appellee.

Before **GORSUCH**, **HOLLOWAY**, and **McKAY**, Circuit Judges.

**HOLLOWAY**, Circuit Judge.

Defendant-Appellant Raul Rosales-Garcia (Rosales) pled guilty to one count of

illegal reentry in violation of 8 U.S.C. § 1326 and was sentenced to a term of

imprisonment of 37 months. On appeal Mr. Rosales challenges his sentence, alleging that the district court incorrectly applied the Sentencing Guidelines. We agree. We **REMAND** to the district court for resentencing.

## I

USSG § 2L1.2 is the Sentencing Guidelines provision applicable to defendants who illegally reenter the country in violation of 8 U.S.C. § 1326. The sentencing scheme embodied in § 2L1.2 imposes, via enhancements to the defendant's base offense level, more severe punishment for defendants who have committed serious prior crimes. A drug trafficking felony is enumerated as one such predicate offense. Depending on the length of the "sentence imposed" for the earlier drug trafficking felony, the defendant is subject to a 12- or 16-level enhancement on his illegal reentry sentence. If the "sentence imposed" for the earlier drug trafficking crime exceeded 13 months, the defendant is subject to the 16-level enhancement set out in § 2L1.2(b)(1)(A).

The sole question posed before us on appeal is whether the 16-level enhancement in USSG § 2L1.2(b)(1)(A) applies to a defendant whose sentence for an earlier drug trafficking felony was made longer than 13 months *after* the defendant was deported and committed the base offense of illegal reentry.

The relevant facts are undisputed and uncomplicated. Mr. Rosales was convicted of a state drug trafficking felony in 2008 and sentenced to 90 days' state imprisonment and 3 years of probation. Mr. Rosales was deported and then illegally reentered the country, violating the terms of his state probation and 8 U.S.C. § 1326. Federal law

enforcement arrested Mr. Rosales shortly after he illegally reentered the country. Mr. Rosales's probation for the earlier state drug offense was revoked by a Utah state court as a result of his illegal reentry. Upon revocation of probation, Mr. Rosales was sentenced in state court to a term of imprisonment of 1 to 15 years on his prior state drug felony. After serving his state drug sentence, Mr. Rosales was released into federal custody and prosecuted in federal court for his illegal reentry. Mr. Rosales agreed to plead guilty to the federal charge as part of the District of Utah's fast-track program. Accordingly, the United States Probation Office prepared a Presentence Report ("PSR") before Mr. Rosales entered his guilty plea.

The PSR recommended that Mr. Rosales's base offense level be enhanced by 16 levels pursuant to USSG § 2L1.2(b)(1)(A). During his sentencing hearing and with the prosecution's permission, Mr. Rosales objected to the 16-level enhancement. The government alleged that Mr. Rosales's sentence upon revocation of his state probation constituted a prior drug trafficking felony for which the sentence imposed exceeded 13 months. Mr. Rosales contended that application of the 16-level enhancement did not comport with the Sentencing Guidelines for the sole reason that the "sentence imposed" did not exceed 13 months at the time he committed the base offense of illegal reentry. Mr. Rosales reserved the right to appeal application of the 16-level enhancement.

The district court rejected Mr. Rosales's argument and applied the 16-level enhancement as recommended in the PSR, resulting in an advisory Guidelines range of 37 to 46 months. The district judge ultimately sentenced Mr. Rosales to a prison term of 37

months.  If the district court had applied the 12-level enhancement under §

2L1.2(b)(1)(B) instead of the 16-level enhancement, as Mr. Rosales says it should have,

the Guidelines range would have been 24 to 30 months.  On appeal, Mr. Rosales

challenges the procedural reasonableness of his sentence, claiming that the district court

improperly applied the Sentencing Guidelines.

**II**

**A**

The district court properly exercised jurisdiction over this case involving a crime

against the United States pursuant to 18 U.S.C. § 3231.  We have jurisdiction over this

appeal of the district court's final sentencing decision pursuant to 28 U.S.C. § 1291 and

18 U.S.C. § 3742(a)(2).

We review *de novo* a district court's interpretation of the Sentencing Guidelines

where the appellant's argument was properly preserved before the district court.  *United

States v. Ford*, 613 F.3d 1263, 1268 (10th Cir. 2010).

In *United States v. Ruiz-Gea*, we confronted the precise issue that Mr. Rosales

raises in his appeal in analogous factual circumstances, but there only reviewed for plain

error because the defendant's objection to the 16-level enhancement was not preserved in

the district court.  *United States v. Ruiz-Gea*, 340 F.3d 1181, 1185 (10th Cir. 2003).  In

*Ruiz-Gea*, we found no plain error in the district court's application of the 16-level

enhancement, but explicitly noted the difficulty of the issue and invited future litigants to

address the question after proper preservation before the district court.  *Id.* at 1188.

Mr. Rosales preserved this issue in the district court proceedings, so here we must apply *de novo* review to the district court's application of the Guidelines. Because our opinion in *Ruiz-Gea* held that the defendant's argument was at least "plausible" and only resolved the case on the ground that the district court did not *plainly* err, in this case we must set out anew in reviewing § 2L1.2's application. *See Ruiz-Gea*, 340 F.3d at 1187.

**B**

The Guidelines provision at issue in this case, USSG § 2L1.2(b)(1), provides as follows:

> "If the defendant previously was deported . . . after (A) a conviction for a felony that is … a drug trafficking offense for which the sentence imposed exceeded 13 months . . . , increase [the base offense level] by 16 levels. . . ."

Application Note 1(B)(vii) to § 2L1.2 defines a "sentence imposed" as including "any term of imprisonment given upon revocation of probation . . . ." Additionally, the commentary makes clear that the length of the defendant's prior sentence is the maximum term of imprisonment for his prior offense. In other words, when the defendant's earlier sentence is for a range of years, the term of imprisonment is the maximum end of that range, for purposes of § 2L1.2.[1] Thus, Mr. Rosales's ultimate state court sentence of 1 to 15 years is a 15-year prison sentence for purposes of § 2L1.2.

---

[1] We note that the recent 2011 Amendments to the Guidelines altered the substance of § 2L1.2 by reducing the magnitude of the offense level increase if the defendant's predicate conviction does not count for criminal history points under Chapter Four. USSG App. C, Vol. III, Amendment 754 (Nov. 1, 2011). Mr. Rosales has not argued that this change might benefit or apply to him.

Mr. Rosales challenges the use of his 15 year sentence because it was not imposed until *after* he committed the base offense in 8 U.S.C. § 1326. In other words, Mr. Rosales asks us only to count the drug trafficking sentence that was imposed *before* he illegally reentered the country.

First and foremost, we carefully focus on the consequences of the Sentencing Commission's use of the word "after" in its provision. According to Mr. Rosales, this word choice means that *all* the elements of the § 2L1.2(b)(1) enhancements — conviction *and* imposition of sentence for a prior drug trafficking felony — must occur prior to the defendant's earlier deportation in order for the enhancement to be implicated. Under Mr. Rosales's view, the § 2L1.2(b)(1)(A) 16-level enhancement plainly does not apply to him since the 15 year sentence for his drug trafficking felony was not imposed before his illegal reentry.

The text of § 2L1.2(b)(1) makes repeated use of the past tense ("imposed"; "exceeded") in referring to the predicate drug trafficking felony sentence serving as the basis for an enhancement, implying that the previous sentence must have been imposed before some date of reference.[2] Because it is undisputed that the defendant's prior *conviction* must have occurred before deportation, we agree with Mr. Rosales that the

---

[2] For its part, the dissent eloquently argues that the Commission's verb tense selection is not particularly helpful. Specifically, the dissent suggests it is "equally plausible" to read the use of "imposed" and "exceeded" as referring a sentencing judge to any sentence imposed before the date of sentencing. Dissenting op. at 3-4. While such a reading may indeed be plausible, for the reasons elaborated in this opinion, we cannot agree that it is "equally" as plausible as the understanding we set forth.

- 6 -

most logical reading of § 2L1.2 is to refer to the date of deportation in evaluating whether the "sentence imposed" for the prior felony exceeded 13 months.

In other words, we conclude that the temporal requirement contained in the text of § 2L1.2 with regard to the defendant's *conviction* also applies to the imposition of his *sentence* for that conviction. This view is consistent with the interpretation of § 2L1.2 adopted by the Seventh Circuit in *United States v. Lopez*, 634 F.3d 948 (7th Cir. 2011). Our ultimate disposition is consistent with results reached in three of our sibling circuits, though we recognize that one circuit has held to the contrary. *Compare United States v. Bustillos-Pena*, 612 F.3d 863, 869 (5th Cir. 2010) (relying on the rule of lenity and concluding that "it is error to implement the sixteen-level enhancement" in analogous factual circumstances), *United States v. Lopez*, 634 F.3d 948, 950 (7th Cir. 2011) ("We hold that [the defendant's] later sentence on probation revocation after his deportation and reentry should not count under section 2L1.2(b)(1)(A)(i)."), and *United States v. Guzman-Bera*, 216 F.3d 1019, 1021 (11th Cir. 2000) (applying an earlier version of § 2L1.2(b)(1)(A) when determining whether the defendant had committed an aggravated felony and concluding that a post-deportation and -illegal reentry sentence lengthening "should not have been used for enhancement purposes under U.S.S.G. § 2L1.2(b)(1)(A)"), *with United States v. Compres-Paulino*, 393 F.3d 116, 118 (2d Cir. 2004) (per curiam) (holding that the "defendant illegally reentered the United States after having been convicted of a drug trafficking offense for which the sentence imposed exceeded 13 months" in analogous factual circumstances) (internal quotations omitted).

*See also United States v. Jimenez*, 258 F.3d 1120, 1126-27 (9th Cir. 2001) (stating in *dictum* that the presence *vel non* of an aggravated felony for purposes of § 2L1.2 turns on whether the statutory elements of such a felony were met "prior to . . . deportation and reentry").

The government argues that the commentary to § 2L1.2 supports its interpretation of the provision. We disagree. We defer to the Sentencing Commission's view as expressed in the commentary unless manifestly inconsistent with the Guidelines themselves. *United States v. Rendon-Alamo*, 621 F.3d 1307, 1309 (10th Cir. 2010). Like the Seventh Circuit in *Lopez*, we conclude that the commentary does not support the government's construction of § 2L1.2. *See Lopez*, 634 F.3d at 953.

We owe no particular deference to the commentary in this case because it does not, despite the government's contrary protestations, alter the temporal constraint inherent in § 2L1.2.[3] Seeking to persuade us otherwise, the government directs us to Application Note 1(B)(vii), which defines the term "sentence imposed" as including "*any* term of imprisonment given upon revocation of probation." USSG § 2L1.2, Application Note 1(B)(vii) (emphasis added). The government urges a simple truism: "any" means "any." According to the government, if the Commission wished to limit the enhancement to only

---

[3] The dissent contends that the "context" of § 2L1.2, *i.e.* the Guidelines commentary, makes "disarmingly simple" the meaning of the guideline provision. Dissenting op. at 2. We cannot agree. Quite telling, in our view, is the Commission's explanation of its written directions contained in the commentary (embodied in the amending documents that enacted Application Note 1(B)(vii)), which makes no mention of the temporal constraint implicated in this case. *See* USSG App. C, Vol. II, Amendment 658 (Nov. 1, 2003); *infra* at pp. 9-10.

- 8 -

those defendants who had their sentence increased *before* they committed the base offense of illegal reentry, they would have picked one of the myriad of words more restrictive than "any" for use in the relevant application note. We are not persuaded.

Most importantly, the commentary simply does not address the temporal constraint at the crux of this appeal. Invocation of the "relation back" doctrine for increased sentences upon revocation of probation, as required by the commentary, is not inconsistent with our understanding of the temporal constraint embodied in the text of § 2L1.2. The only reference to any sort of temporal constraint in the relevant portion of § 2L1.2's commentary is that the meaning of "sentence imposed" is "without regard to the date of the conviction." We do not interpret this as an exception to the temporal limitation that we have concluded is embedded in § 2L1.2. Instead, the phrase "without regard to the date of conviction" simply instructs us to consider, in applying § 2L1.2, all of the defendant's convictions *prior* to his illegal reentry, no matter how far *in the past* they occurred. *See*, e.g., *United States v. Olmos-Esparza*, 484 F.3d 1111, 1113-14 (9th Cir. 2007); *United States v. Camacho-Ibarquan*, 410 F.3d 1307, 1313-15 (11th Cir. 2005).

Moreover, in explaining the rationale for its definition of "sentence imposed," the Sentencing Commission clarified that its definition "is consistent with the case law interpreting the term ['sentence imposed']. . . ." USSG App. C, Vol. II, Amendment 658 (Nov. 1, 2003). The Commission cited four cases in support of the definition it proffered. *Id.* None of the four cases implicated or discussed the temporal constraint at issue in this

appeal.  *See United States v. Moreno-Cisneros*, 319 F.3d 456 (9th Cir. 2003) (holding that the defendant's "sentence imposed" exceeded 13 months where the defendant received an increased sentence upon revocation of probation imposed *prior* to the defendant's deportation); *United States v. Compian-Torres*, 320 F.3d 514 (5th Cir. 2003) (reaching the same conclusion as *Moreno-Cisneros* where the defendant's sentence had been increased due to revocation of probation *prior* to deportation); *United States v. Hidalgo-Macias*, 300 F.3d 281 (2d Cir. 2002) (per curiam) (same); *United States v. Rodriguez-Arreola*, 313 F.3d 1064 (8th Cir. 2002) (establishing that the length of the "sentence imposed" was the maximum term the defendant could have served where the only imposition of sentence occurred *prior* to the defendant's deportation).  Notably, the Commission made no reference to *United States v. Guzman-Bera*, 216 F.3d 1019 (11th Cir. 2000) (per curiam), a case which *did* explicitly address and recognize the temporal constraint in § 2L1.2 with regard to both conviction *and* sentencing, albeit in the aggravated felony context.  The temporal constraint for imposition of sentences inherent in § 2L1.2 had been plainly recognized in *Guzman-Bera* — *before* the 2003 amendments were enacted.  The Commission nevertheless ignored the matter and referenced only cases involving *pre*-deportation probation revocations in its 2003 amendment.

If the Commission had, in its commentary or § 2L1.2 itself, addressed or at least mentioned the temporal constraint that has arisen in Mr. Rosales's case, we would, of course, give great deference to its interpretation of the Guidelines.  *See United States v. Morris*, 562 F.3d 1131, 1136 (10th Cir. 2009).  Unfortunately for the government, the

pertinent Application Note fails to make any reference to the temporal restraint embodied in § 2L1.2(b)(1) — that the prior conviction and imposition of sentence must occur *before* the defendant illegally reenters the country. We are not ignoring the commentary on the grounds that it is in conflict with the Guidelines themselves; instead, we find that the commentary offers no guidance at all as to the temporal constraint lying at the heart of this appeal. We therefore decline to conclude that the commentary compels the result advocated by the government.

Our conclusion that the commentary offers no guidance as to the temporal restraint in § 2L1.2 does not render the relevant portion of the commentary meaningless or superfluous. If, for example, a defendant is on probation for a pre-deportation drug trafficking felony and has his sentence increased upon revocation of probation *before* he is deported, the commentary clarifies that his post-revocation sentence, which would clearly satisfy the temporal restraint in § 2L1.2, should be included in calculating his enhancement level. The result in this hypothetical example is not at all obvious without the interpretive guidance offered in the commentary to § 2L1.2.

We also note that our interpretation of § 2L1.2 is consistent with its overall purpose as part of the Guidelines sentencing scheme. The parties agree that the purpose of § 2L1.2(b)(1) is to punish illegal reentry more severely where the defendant has committed one or more of certain enumerated prior crimes (in this case, a drug trafficking felony). The method for determining the seriousness of the prior drug trafficking felony is clearly and numerically prescribed — the length of the sentence for the earlier crime is

determinative of the degree of enhancement — even though it ultimately provides only a rough measure of seriousness. The Commission's approach is, in our view, straightforward: if the defendant received a long sentence for a drug trafficking crime before he was deported, he is probably a serious drug offender and we therefore must punish more severely his subsequent (*i.e.* post-increased sentencing) illegal reentry.[4] We agree with Mr. Rosales that the Commission did not intend consideration of a sentence imposed as a result of post-deportation actions (in this case, illegally reentering the country), even if technically imposed as part of the punishment process for an earlier felony.

Mr. Rosales's act of illegally reentering the country reveals nothing about the seriousness of his drug trafficking conviction at the time he violated 8 U.S.C. § 1326. It would be inconsistent with the purpose of § 2L1.2 — whose text draws a distinction between pre- and post-illegal reentry actions — to consider revocation of his probation resulting from the base offense of illegal reentry in measuring the seriousness of his earlier drug trafficking felony.

We acknowledge that our decision is squarely in conflict with the Second Circuit's holding in *United States v. Compres-Paulino*, 393 F.3d 116 (2d Cir. 2004) (per curiam).

---

[4] To alleviate a concern of the dissent, we should clarify that we do not suggest that probation revocation sentences should be ignored altogether in determining the applicability of § 2L1.2, or any other sentencing enhancement for that matter. *See* dissenting op. at 7. Indeed, we explicitly set forth an example of a case where a probation revocation sentence must quite rightly play a role in determining the applicability of the § 2L1.2 enhancement. *See supra* at p. 11.

We disagree with that ruling for the reasons elaborated above. One particular concern we have with that decision is the disparate treatment it gives to like offenders whose prosecutions have happened to differ sequentially. As Mr. Rosales points out, if we were to adopt the Second Circuit's rule, Mr. Rosales would face more substantially increased punishment solely because of the happenstance that his state probation was revoked before his federal prosecution commenced. This concern has also been shared by the Fifth and Seventh Circuits. *See United States v. Bustillos-Pena*, 612 F.3d 863, 867-68 (5th Cir. 2010); *United States v. Lopez*, 634 F.3d 948, 951-52 (7th Cir. 2011). The possibility of anomaly is not motivating us to "rewrite the Guidelines," a practice against which we admonished in *United States v. Dozier*, 555 F.3d 1136, 1141 (10th Cir. 2009). Instead, we simply bolster our conclusion, which is grounded in the Guidelines text, by acknowledging that it avoids needless and nonsensical aberrant results.

Although not dispositive to our resolution of the issue at hand, we find it noteworthy that the Sentencing Commission has failed to amend § 2L1.2 despite the holdings of the Fifth and Seventh Circuits, which have interpreted § 2L1.2 in the manner urged by Mr. Rosales. We do not go as far as characterizing the Commission's silence on the matter as affirmative assent to the positions of these circuits, especially given that the circuit split on this issue has only become pronounced quite recently; the Fifth Circuit's opinion in *Bustillos-Pena*, issued in July 2010, represented the first direct conflict with the Second Circuit's 2004 opinion in *Compres-Paulino*. The Seventh Circuit opinion in *Lopez* was issued in March 2011, just one month prior to the Commission's submission of

the 2011 proposed amendments to Congress. We would err to unabashedly speculate that the Commission's silence on this narrow issue of interpretation necessarily constitutes dispositive agreement with the Fifth and Seventh Circuits and disagreement with the Second Circuit. Nevertheless, the Commission's failure to address this issue — the 2011 proposed amendments, submitted in April 2011, make no mention of it — offers at least a modicum of further support for the notion that the Fifth and Seventh Circuits' construction of the provision is not inconsistent with the Commission's intention. *Cf. Braxton v. United States*, 500 U.S. 344, 348 (1991) (stating that Congress necessarily contemplated that the Sentencing Commission, in carrying out its duty under 28 U.S.C. § 994(o) to revise the Guidelines, would issue clarifying revisions in light of conflicting judicial decisions); USSG App. C, Vol. III, Amendment 754 (Nov. 1, 2011) (offering no clarification of the "temporal constraint" issue litigated in this case as well as *Lopez* and *Bustillos-Pena*). We conclude that the best understanding of § 2L1.2 incorporates a temporal restraint with regard to the imposition of the defendant's earlier sentence.

### III

Having concluded that the district court misapplied the Sentencing Guidelines, we must determine whether to remand Mr. Rosales's case to the district court for resentencing. Although the Guidelines range before the district court is advisory in nature, it is the "foundation or starting point from which the sentencing process proceeds"; absent any showing of harmless error, we must reject a sentence "premised on an erroneous Guidelines calculation." *United States v. Rendon-Alamo*, 621 F.3d 1307,

- 14 -

1308 (10th Cir. 2010) (quotations omitted); *see also United States v. Keck*, 643 F.3d 789, 798 (10th Cir. 2011). The government bears the burden of proving harmless error by a preponderance of the evidence. Harmless error is defined as an error that "did not affect the district court's selection of the sentence imposed." *Keck*, 643 F.3d at 798 (citing *United States v. Labastida-Segura*, 396 F.3d 1140, 1143 (10th Cir. 2005)). Having failed to argue that any error by the district court was harmless, the government has not met its burden.

Mr. Rosales has conceded that he is subject to the 12-level enhancement in § 2L1.2(b)(1)(B). The district court should recalculate Mr. Rosales's guidelines range with the smaller 12-level enhancement from § 2L1.2(b)(1)(B) replacing the 16-level enhancement from § 2L1.2(b)(1)(A) and proceed accordingly. We **REMAND** to the district court for resentencing in accordance with this opinion.

**IT IS SO ORDERED.**

10-4224, *United States v. Rosales-Garcia*

**GORSUCH, J.,** dissenting:

In the richness of the English language, few things can create as much mischief as piling prepositional phrase upon prepositional phrase. The child says, "I saw the man on the hill with the telescope." Did the child use the telescope to see the man on the hill? Or did the child see a man — or even a hill — bearing a telescope? A newspaper headline heralds, "Brothers Reunited after 20 Years on a Roller Coaster." Did the brothers recently bump into each other at an amusement park? Or were they the long suffering experimental subjects of some evil genius?

Of course, we're all guilty of venial syntactical sins. And our federal government can claim no exception. Which takes us to USSG § 2L1.2(b)(1) and this jumble of prepositional phrases —

> If the defendant previously was deported, or unlawfully remained in the United States, after —
>
> (A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded thirteen months . . . [add a sentencing enhancement].

This has to be a sentence only a grammar teacher could love. We have here our old nemesis the passive voice, followed by a scraggly expression of time ("previously . . . after"), then a train of prepositional phrases linked one after another and themselves rudely interrupted by a pair of parenthetical punctuations.

Happily, our role isn't to grade the grammar, only discern the meaning. And often a speaker's meaning can be clear even when his grammar isn't. We know from context what the child means when talking about the telescope (because background knowledge tells us, say, that the child has a telescope and the man and hill do not). Context likewise explains what the newspaper is getting at (because, for example, the first sentence of the article makes clear the brothers hadn't seen each other in years). Even when the grammar's gnarled, meaning often can be straightforward enough.

And that well describes this case. At first blush, one might wonder whether *only* a conviction for a drug trafficking felony must precede a defendant's deportation — or whether the conviction and the imposition of a full 13 month sentence must *both* predate the deportation. The grammar and language of the guideline provision before us supply ample support for each of these competing readings. But, as with much in life, when we bother to consult the directions (the relevant context in this case), what at first appears confusing proves disarmingly simple.

First, though, the jumble of parts that creates the confusion.

The prepositional phrase that's the focus of our attention — "for which the sentence imposed exceeded thirteen months" — comes at the caboose of the prepositional train. It modifies the prepositional phrase just before it, describing the nature of the required felony — "for a felony that is a drug trafficking offense" — that itself modifies an even earlier prepositional phrase — "after a conviction" — that, finally, modifies the

phrase "was deported."  From all this, we can be sure that the *deportation* must come after a conviction for a drug trafficking felony.  But we can have no similar confidence that the "sentence imposed" must.  After all, the prepositional phrase discussing the "sentence imposed" is not the next car in the prepositional train, or even the one after that, but two modifying phrases away.

The parenthetical punctuation only serves to accentuate the grammatical ambiguity.  "[D]eported . . . after — (A) a conviction for a felony" tells us in no uncertain terms that the deportation has to come after a felony conviction.  But then the nature of both the felony and its sentence appear in a separate, punctuationally pronounced, subsection: "that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months."  Here again the time specification ("after") is separated, not just grammatically now but also by punctuation, from the "sentence imposed."

Neither does verb tense help much.  True, the guideline asks us whether the "sentence *imposed exceeded* thirteen months," but the use of the past tense does not necessarily mean that a defendant's sentence must have exceeded 13 months *at the time of deportation*.  The guidelines are, after all, written for application by a federal sentencing judge.  And it's equally plausible to read this phrase as referring to any sentence imposed before the time of sentencing in the federal illegal reentry case.  This reading finds further support in the fact that the guideline introduces the type of conviction needed to trigger the enhancement with the present tense verb "is."  This

-3-

suggests that a conviction might qualify for enhancement if it *is* — at the time the district court sentences the defendant — "a drug trafficking offense for which the sentence imposed exceeded 13 months."

When we open the box and find we can't make sense of the cascade of parts flowing from it, sometimes it helps to consult the accompanying directions. And here the sentencing commission's commentary on how to apply its guidelines provides just the guidance we need. The commentary expressly instructs us that in calculating the "length of the sentence imposed" — in determining whether the sentence imposed exceeded 13 months — we must include "*any* term of imprisonment given upon revocation of probation, parole, or supervised release." USSG § 2L1.2, Application Note 1(B)(vii) (emphasis added). The term "any" tells us to account not for *some* probation revocation sentences but "every" or "all" probation revocation sentences, "of whatever kind." Webster's Third New International Dictionary 97 (2002).

So it is the compositional cloud now lifts. We know that deportation must come after a conviction. That conviction must be for a felony drug trafficking offense. And that offense must result in a sentence greater than 13 months. But in figuring the length of the sentence we can now be sure that we must include "any terms of imprisonment given upon revocation of probation, parole, or supervised release." In this case, of course, that means Mr. Rosales was indeed eligible for a sentencing enhancement. In

total and eventually, his sentence for a drug trafficking felony well exceeded 13 months. So the district court got it right and should be affirmed.

Of course, contrary arguments can be — and have been — made about the guideline's meaning. But, to my mind, a careful inspection of them only serves to confirm the correctness of the district court's course.

Some say that the guideline is "most naturally" read to require the "sentence imposed" to come "after" a deportation (or, presumably, after the defendant remained in the country illegally). *See, e.g.*, *United States v. Bustillos-Pena*, 612 F.3d 863, 867 (5th Cir. 2010); Maj. Op. at 6 *et seq.* Yet, as we have just seen, the commission's grammar and punctuation — independently and together — suggest the plausible, alternate reading that the "after" time limit applies only to the conviction, not the sentence imposed. And where, as here, a guideline is susceptible to two plausible readings, it is the commission in its commentary, not a court in its opinion, that gets to say what the provision "most naturally" means. The Supreme Court has repeatedly emphasized just this point, instructing that the sentencing commission's commentary resolving ambiguities in the guidelines must be treated as "authoritative." *Stinson v. United States*, 508 U.S. 36, 38 (1993).

To this, some respond that the commentary doesn't speak to the question before us. They suggest that the commentary tells us only that in applying the guideline courts may look to "all of the defendant's convictions *prior* to his illegal reentry." Maj. Op. at

9; *see also id.* at 8-12; *cf. United States v. Lopez*, 634 F.3d 948, 952-53 (7th Cir. 2011).

But the problem with this argument is that it reads into the commentary limiting language that simply isn't there. The commentary does not say that the "sentence imposed" includes only time served "prior to his illegal reentry." In fact, the commentary tells us exactly the opposite. It instructs that, when calculating the "length of the sentence imposed," we are to take account of *"any* term of imprisonment given upon revocation." And that plain direction tells us all we need to know.[1]

Retreating from the language of the guideline and commentary, some say that sound policy would be better served by limiting § 2L1.2's enhancement only to defendants who were sentenced to more than thirteen months prior to deportation. Only *pre-deportation* prison time, the argument goes, is a valid measure of the seriousness of the underlying felony. *Post-deportation* revocation sentences are only "technically imposed" as part of the "earlier felony." Maj. Op. at 12; *Bustillos-Pena*, 612 F.3d at 867; *Lopez*, 634 F.3d at 951. This argument, however, simply mistakes our role. Sentencing

---

[1] The majority seeks to justify reading its new and very different language into the commentary based on historical inferences. The majority points out that, in adopting the 2003 amendment, the sentencing commission said its amendment was "consistent" with four circuit cases allowing the aggregation of original and pre-deportation revocation sentences. Maj. Op. at 9-10. But, as the majority concedes, those cases didn't address, one way or the other, post-deportation revocation sentences. Thus, by their terms they tell us precisely nothing about the question before us. Separately, the majority says the commission neglected to cite one circuit case that *did* discuss post-deportation revocation sentences. But what inference, if any, should be drawn from this oversight is anyone's guess. Still, this much has to be true: any such guesswork cannot justify overriding the plain language of the commentary and the explanatory note accompanying the commission's adoption of the commentary — both of which unambiguously direct us to take account of *"any"* probation revocation sentence, without regard to any time limit. *See* USSG App. C., Vol. II, Amendment 658 (Nov. 1, 2003).

courts may of course choose to vary from the guidelines, but that doesn't mean we may rewrite them or their commentary to suit our penological preferences. *See United States v. Dozier*, 555 F.3d 1136, 1141 (10th Cir. 2009). Neither, for that matter, is it clear why prudent penological policy would distinguish between pre- and post-deportation sentences. An infraction that causes a court to impose a revocation sentence would, after all, seem to be no less serious after deportation than before. Nor could one plausibly suggest that we should ignore probation revocation sentences altogether when trying to measure the seriousness of the defendant's offense. We've long rejected precisely this view, explaining that "[a] defendant who does not abide by the terms of his probation . . . demonstrate[s] that he should not have been given probation in the first place" and merits instead the full prison term he is (eventually) required to serve. *United States v. Ruiz-Gea*, 340 F.3d 1181, 1186 (10th Cir. 2003) (quotation omitted).

Some say that restricting our attention to time served prior to the defendant's deportation (or unlawfully remaining in the country) is necessary to avoid "disparate" treatment between similarly situated individuals. *See* Maj. Op. at 13; *Bustillos-Pena*, 612 F.3d at 867-68; *Lopez*, 634 F.3d at 952. On this line of thinking, it is unjust that the application of a sentencing enhancement might turn on whether state or federal officials happen to collar the defendant first. But this objection once again mistakes the nature of our role in interpreting the guidelines, failing to abide the fact that "the possibility of anomalous results is no[] reason to" rewrite the sentencing commission's guidance. *See Dozier*, 555 F.3d at 1141. Neither, for that matter, is it apparent that there's even a

-7-

meaningful anomaly to worry about in the first place.  Federal sentencing law usually affords special consideration to state criminal convictions as a matter of comity — and does so even in cases of overlapping jurisdiction where the federal sentencing result would've been different if federal (rather than state) authorities had caught the offender first.  Besides, under § 2L1.2, a federal sentencing court has ample discretion to address any fairness concerns whenever the strict application of the enhancement provision results in an "overstate[ment]" of the seriousness of a defendant's prior conviction.  USSG § 2L1.2, Application Note 7.

Finally, some say the rule of lenity should play a role in how we read the guideline provision before us.  *See Bustillos-Pena*, 612 F.3d at 868-69.  But whatever role the rule plays in the sentencing (as opposed to conviction) context, it isn't triggered unless an interpretive ambiguity persists after "seizing every thing from which aid can be derived."  *Smith v. United States*, 508 U.S. 223, 239 (1993) (quotation marks and alterations omitted).  And, again, that's just not our case after taking into account the sentencing commission's (authoritative) directions in its commentary.

In these ways then, the common objections to the district court's course in this case, at best, do nothing to call it into question — and, at worst, they actually tend to confirm that the district court was right on target.

Still, one final observation, really a plea, a plea for syntactical assistance, is in order.  Though the guideline's meaning comes clear from the commission's commentary,

there's no getting around the fact that the guideline's snarl of prepositional phrases has managed to tie us circuit judges in knots. Some read the provision as I do, *see United States v. Compres-Paulino*, 393 F.3d 116, 118 (2d Cir. 2004) (per curiam); *Bustillos-Pena*, 612 F.3d at 869-70 (Clement, J., dissenting); others read it as my colleagues do, *see Lopez*, 634 F.3d at 949; *United States v. Guzman-Bera*, 216 F.3d 1019, 1020-21 (11th Cir. 2000). And who's right and who's wrong about all this may be ultimately less important than the fact we're unable to agree. Because of our disagreement, similarly situated defendants receive different sentences only because of the happenstance of the circuit in which they sit. And this is surely among the most unfortunate possible sentencing anomalies of all. One thing everyone concerned might agree on is that it would be a welcome thing indeed if the sentencing commission would intervene to loosen the knot we have tied, set us aright in the application of § 2L1.2, and in this way help ensure the consistent treatment of those who appear before the federal courts.